No. 95-1197

Rhonda Callanan,             *
                                     *
       Plaintiff - Appellant,   *
                                     *   Appeal from the United
v.                            *   States District Court
                                     *   for the District of
Marvin T. Runyun, Postmaster General,*   Minnesota.
    United States Postal Service,   *
                                     *
       Defendant - Appellee.    *

Submitted:  October 19, 1995

Filed:  February 9, 1996

Before MORRIS SHEPPARD ARNOLD, FLOYD R. GIBSON, and ROSS, Circuit
    Judges.

FLOYD R. GIBSON, Circuit Judge.

Rhonda Callanan appeals the district court's[1] order granting summary judgment in favor of the United States Postal Service (the "Service") on her Title VII hostile environment claim. She also challenges the district court's[2] decision, issued after a six day bench trial, to dismiss her disparate treatment claim against the Service. We affirm.

---

[1]The HONORABLE RICHARD H. KYLE, United States District Judge for the District of Minnesota, adopting the Report and Recommendation of the HONORABLE RAYMOND L. ERICKSON, United States Magistrate Judge for the District of Minnesota.

[2]The HONORABLE ROBERT G. RENNER, Senior United States District Judge for the District of Minnesota.

## I. BACKGROUND

On December 17, 1988, Callanan began working as a file clerk at the Service's Mankato, Minnesota branch. Callanan found this job to be easy and, by all accounts, performed well in her vocation. Approximately ten months after her initial employment, Callanan accepted a position as a part-time flexible ("PTF") letter carrier. PTF letter carriers sort, deliver, and collect mail on various routes around Mankato and fill in for full-time regular carriers when those employees are on sick leave, vacation, or are otherwise absent. When a regular carrier vacates his position for five or more days, the PTF carriers have an opportunity to "bid" on the temporarily available route. The bidder with the most seniority as a PTF carrier then receives the assignment. All other decisions concerning the allocation of responsibilities to PTF carriers are not based upon seniority, but rather are made "for the good of the Service" and at the discretion of management at the Mankato facility.

After accepting the position as a PTF carrier, Callanan began to feel that her supervisors were treating her differently from similarly situated male employees. Primarily, Callanan believed that she received less desirable job assignments than her male counterparts. For example, she claims that she and the other female PTF carrier were assigned "collection one," described by her as the most difficult collection route, a disproportionate number of times. Callanan also maintains that the female PTF carriers received fewer opportunities to "case," or follow, full-time carriers, a desirable task because it gave the PTF employees a chance to learn more routes. Although the Service does not directly dispute these allegations, it claims that Callanan's supervisors properly exercised their discretion in making job assignments. Because management at the Mankato facility viewed Callanan as a no better than average carrier, she received less favorable work.

2

Callanan also had periodic negative personal encounters with her supervisors and peers. On one occasion, she was referred to as a "bitch" by a fellow employee who was later reprimanded over the incident. She additionally contends that she was disciplined more often and more severely than the male PTF carriers. Particularly, she points to a formal warning letter that she received following her second violation of a certain Service rule. In October of 1991, after she was diagnosed as having post-traumatic stress disorder, Callanan left the employ of the Service and began collecting workers' compensation benefits. She filed this suit on December 3, 1992, alleging hostile environment sexual harassment, disparate treatment sexual harassment, retaliatory discipline, and pendent state law claims.

During discovery the Service claimed that only one other person in the previous ten years had complained of sexual harassment at the Mankato branch. The district court, relying in part on this information, granted the Service's summary judgment motion as to all of Callanan's causes of action except the disparate treatment claim. Later, as trial neared, Callanan's attorney fortuitously learned of files containing charges of sexual harassment made by several other female employees at the Mankato facility.[3] At that time, Callanan asked the district court, pursuant to Rule 60(b)(2) of the Federal Rules of Civil Procedure, to vacate the summary judgment order rendered by Judge Kyle to the extent that it dismissed her hostile environment claim. Stating that the pending case was one of "disparate treatment, period," the district court denied this motion.

At trial, in an attempt to establish indirect evidence of the

---

[3]The failure to produce these files in response to Callanan's initial request was unquestionably due to the Service's confusion concerning the scope of discovery and is in no way reflective of a contemptible attempt by the Service or its attorneys to defraud the court.

Service's motive for treating female PTF carriers differently than their male peers, Ms. Callanan called to the stand several witnesses who testified about episodes of discrimination that they allegedly had either experienced or witnessed at the Mankato facility. While the district judge sustained the Service's relevancy objection to this testimony, he allowed Ms. Callanan to tender it as an offer of proof. At the conclusion of the evidence, the district court dismissed Ms. Callanan's disparate treatment claim. Specifically, he found that she had met the burden of showing a prima facie case of discrimination, but he determined that the Service had offered legitimate, nondiscriminatory reasons for its actions. Because Ms. Callanan did not carry her ultimate burden of showing that the Service engaged in intentional discriminatory activity, the district court ruled in favor of the Service. Callanan now appeals to this Court.

## II. DISCUSSION

### A. Hostile Environment

#### 1. Summary Judgment

Callanan argues that the district court improperly granted the Service's motion for summary judgment on her hostile environment claim. Summary judgment is only appropriate when no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); <u>Cram v. Lamson & Sessions Co.</u>, 49 F.3d 466, 471 (8th Cir. 1995). On review, we apply the same standard as the district court, resolving all disputed facts and drawing all inferences in favor of the nonmoving party. <u>Cram</u>, 49 F.3d at 471.

To prevail on a hostile environment cause of action, a plaintiff must establish that:

4

> (1) she belongs to a protected group; (2) she was subject
> to unwelcome sexual harassment; (3) the harassment was
> based on sex; (4) the harassment affected a term,
> condition, or privilege of employment; and (5) [her
> employer] knew or should have known of the harassment and
> failed to take proper remedial action.

Kopp v. Samaritan Health Sys., Inc., 13 F.3d 264, 269 (8th Cir. 1993). Assuming that Callanan has otherwise carried her burden,[4] we find that summary judgment was appropriate because she has failed to show under the totality of the circumstances that the harassing conduct was "so severe or pervasive that it create[d] an abusive working environment." Burns v. McGregor Elec. Indus., Inc., 955 F.2d 559, 564 (8th Cir. 1992)(citing Meritor Sav. Bank v. Vinson, 477 U.S. 57, 67 (1986)). To the contrary, Callanan's allegations fall far short of proving the sort of sustained harassment that we have previously determined to be a proper foundation for successfully pursuing a hostile environment cause of action. See, e.g., id. at 560-62 (describing a consistent course of insulting and debasing conduct). We agree with the district court that the conduct to which Callanan was subjected was not "frequent, severe, physically threatening, or humiliating." Furthermore, we feel that the Service, when it became aware of the improper behavior, took "prompt remedial action reasonably calculated to end the harassment." Davis v. Tri-State Mack Distribs., Inc., 981 F.2d 340, 343 (8th Cir. 1992)(quotations omitted). Thus, we conclude that the district court appropriately granted the Service's motion for summary judgment on this claim.

---

[4]This assumption represents no easy endeavor. To begin with, Callanan has failed to satisfactorily demonstrate a connection between some of her chief complaints and her employment with the Service. For example, she has not shown that Service personnel were responsible for her unwanted subscription to Penthouse magazine. In addition, after thoroughly reviewing the record, we feel that gender neutral personality conflicts, rather than sex, may have been the fountainhead which fed the harassment of Callanan.

## 2. The Rule 60(b)(2) Motion

Callanan further argues that the district court wrongfully refused to grant her Rule 60(b)(2) motion to vacate the order granting summary judgment to the Service on her hostile environment claim. Rule 60(b)(2) "provides for extraordinary relief which may be granted only upon an adequate showing of exceptional circumstances." Rosebud Sioux Tribe v. A & P Steel, Inc., 733 F.2d 509, 515 (8th Cir.)(quotation omitted), cert. denied, 469 U.S. 1072 (1984). The district court possesses wide discretion in determining whether to grant a motion under this Rule, and we will not reverse absent a clear abuse of that discretion. Atkinson v. Prudential Property Co., 43 F.3d 367, 371 (8th Cir. 1994).

Rule 60(b)(2), which applies to claims of newly discovered evidence, is a proper ground for relief where the movant shows:

> (1) that the evidence was discovered after [the summary judgment hearing]; (2) that the party exercised due diligence to discover the evidence before the end of [the summary judgment hearing]; (3) that the evidence is material and not merely cumulative or impeaching; and (4) that a new [hearing] considering the evidence would probably produce a different result.

Id. Here, Callanan has failed to meet the fourth criterion. We are unpersuaded that the district court, even if it had known of the discrimination claims made by other employees at the Mankato branch, would have declined to grant the summary judgment motion. In other words, even in light of this newly discovered evidence, Callanan failed to substantiate that the Mankato postal facility was the situs of conduct "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 114 S. Ct. 367, 370 (1993)(quotation omitted). Accordingly, the district court did not clearly abuse its discretion when it refused to grant Callanan's motion.

## B.  Disparate Treatment

### 1.  Dismissal of the disparate treatment claim

Callanan asserts that the district court committed error when, following a six day bench trial, it dismissed her disparate treatment claim.  The district court concluded that Callanan had proven her prima facie case, but it also found that the Service had offered legitimate, nondiscriminatory reasons for Callanan's treatment.  Because Callanan failed to carry her ultimate burden of showing that she was the victim of intentional discrimination, the district court ruled in favor of the Service.

We apply a clearly erroneous standard when reviewing a district court's finding of discrimination <u>vel non</u>.  <u>St. Mary's Honor Ctr. v. Hicks</u>, 113 S. Ct. 2742, 2756 (1993).  Callanan's primary complaint of disparate treatment concerns her more frequent assignment to unfavorable duties.  According to the Service, though, many factors contribute to the daily apportionment of responsibilities, including a carrier's ability, efficiency, and knowledge of a particular route.  Callanan has not shown that these reasons are merely a pretext for intentional discrimination.  Also, we agree with the district court that Callanan was not disciplined more often or severely than her male coworkers.  We need not elaborate further regarding Callanan's additional charges on which she bases her claim of disparate treatment.  Suffice it to say that she has utterly failed to prove that the Service "intentionally discriminated against [her] because of [her gender]."  <u>Id.</u> at 2749 (quotations omitted).  The district court's finding of no discrimination was not clearly erroneous.

### 2.  Evidentiary Exclusions

Finally, Callanan challenges the district court's decision to exclude the testimony of various individuals who attested to acts

of discrimination that they reportedly experienced or witnessed at the Mankato Post Office. Although none of these persons worked as a letter carrier or claimed that Callanan's supervisors had engaged in discriminatory conduct, Callanan attempted to introduce their testimony in order to buttress her assertion that the disparate treatment she received was motivated by her gender.

A district court's exclusion of evidence under Rules 402 and 403 of the Federal Rules of Evidence is entitled to substantial deference on review. Hawkins v. Hennepin Technical Ctr., 900 F.2d 153, 155 (8th Cir.), cert. denied, 498 U.S. 854 (1990). We have previously cautioned, though, about the harmful effects of blanket evidentiary exclusions in discrimination cases, noting that "[a] plaintiff's ability to prove discrimination indirectly, circumstantially, must not be crippled by evidentiary rulings that keep out probative evidence because of crabbed notions of relevance . . . ." Estes v. Dick Smith Ford, Inc., 856 F.2d 1097, 1103 (8th Cir. 1988)(quoting Riordan v. Kempiners, 831 F.2d 690, 698 (7th Cir. 1987)). Thus, "[b]ecause an employer's past discriminatory policy and practice may well illustrate that the employer's asserted reasons for disparate treatment are a pretext for intentional discrimination, this evidence should normally be freely admitted at trial." Hawkins, 900 F.2d at 155-56. "The evidence, however, must assist in the development of a reasonable inference of discrimination within the context of each case's respective facts." Bradford v. Norfolk S. Corp., 54 F.3d 1412, 1419 (8th Cir. 1995).

Giving full regard to our admonitions in previous opinions, we do not feel that the district court abused its discretion when it excluded Callanan's proffered evidence of other alleged acts of discrimination. To begin with, the excluded testimony in this case, unlike the statistical evidence and specific factual allegations involved in our earlier decisions, see, e.g., Estes, 856 F.2d at 1102-04, consisted largely of generalized, subjective

8

assertions of a perceived bias in operations at the Mankato facility. Moreover, to the extent that the testimony did identify discrete acts of discrimination, the witnesses did not complain that Callanan's own supervisors had engaged in any behavior that we could correctly characterize as improper.[5] Cf. id. at 1104 (mentioning that evidence of an employer's past discriminatory acts may not be probative where the employees involved in the improper activity were unconnected with the employees who discriminated against the complainant). Lastly, and perhaps most importantly, the evidentiary ruling in this case was not the type of blanket pretrial exclusion that we have in the past viewed with such skepticism. See id. at 1103 (stating that blanket pretrial exclusions are examined with "particular care"). Instead, in what must only be viewed as an extraordinary display of patience, the district judge in this case allowed Callanan to present her offer of proof in testimonial form and withheld a final ruling on the evidence until after the trial was completed. Under these circumstances, we think that the district court was in a unique position to adjudge the relevance and probative value of the testimony. As such, we cannot say that the district court abused its discretion in excluding the evidence proffered by Callanan.

## III. CONCLUSION

For the foregoing reasons, we affirm the district court's order granting summary judgment to the Service on Callanan's hostile environment sexual harassment claim. We also affirm the district court's dismissal of Callanan's disparate treatment cause of action.

---

[5]Also, it would be difficult for us to conclude that some of the alleged conduct was at all gender based. For instance, we feel confident that certain cretinous activities in which postal employees participated, such as contests comparing individuals' aptitude for belching and flatulence, would be equally distasteful to similarly cultured males and females.

9

Affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.