No. 95-3466

_____

Brenda Gillming,                    *
                                    *
          Appellant,                *
                                    *    Appeal from the United States
     v.                             *    District Court for the
                                    *    Western District of Missouri.
Simmons Industries,                 *
                                    *
          Appellee.                 *

_____

          Submitted:  May 13, 1996

          Filed:  August 6, 1996

_____

Before BOWMAN, Circuit Judge, HENLEY, Senior Circuit Judge, and
     WOLLMAN, Circuit Judge.

_____

WOLLMAN, Circuit Judge.


     Brenda Gillming appeals the district court's[1] judgment in favor of
defendant Simmons Industries (Simmons) on her claim brought under Title VII
of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., and the
Missouri Human Rights Act (MHRA), Mo. Rev. Stat. §§ 213.010 et seq.  We
affirm.


                              I.


     Gillming began working on the day shift as a trimmer at Simmons'
poultry processing plant in Southwest City, Missouri, on June 7, 1991.
Gillming testified that on February 7, 1992, as she was walking across the
parking lot to her car, she saw a co-worker,

_____

     [1]The Honorable Joseph E. Stevens, Jr., United States District
Judge for the Western District of Missouri.

John Casey, sitting in his car.  Another co-worker, Tony Guillermo, was leaning against Casey's car talking to him, and he yelled to Brenda that she had a flat tire and offered to help her change it.  Guillermo followed Gillming to her car.  Upon discovering that she did not have a flat tire, Gillming informed Guillermo of this fact.  Guillermo then asked for a ride home.  Gillming refused, whereupon Guillermo responded, "Well, I don't want to rape you Brenda.  I just want to have sex with you."  Gillming told Guillermo to leave, and he did.  Gillming did not immediately report the incident to management because she believed she had handled it.

Gillming testified that on February 21, 1992, a second incident occurred involving Guillermo.  As Gillming was retrieving her apron from the apron rack, she turned around to find Guillermo yelling at her that she was always bumping into him and never said "excuse me."  Gillming told Guillermo that she had not bumped into him, whereupon Guillermo struck her in the chest with both hands.  Gillming yelled back at Guillermo, using profanity.

Gillming immediately reported this incident, as well as the February 7 incident, to her supervisors, Doug Green and John Meyers, who then spoke with Guillermo.  The following week Meyers told Gillming that Guillermo had denied everything and that there was nothing they could do.  Gillming then reported the incidents to the plant personnel director, Kent Johnson, who instructed her to fill out an incident report.  Johnson reported to his supervisor, Don Felder, the same day that Gillming filed the complaint.  Johnson stated, however, that he believed it had no merit and he was not taking it seriously.  Felder delegated to Johnson the task of investigating the complaint.

Gillming followed up with Johnson about a week later and reported to Johnson that Guillermo was influencing his co-workers into laughing and pointing at her and making sexually harassing remarks.  Johnson told Gillming that he was working on the problem.

Gillming spoke with Johnson again the following week, telling him that the harassment was continuing. Johnson once again assured her that he was working on the problem. Gillming persuaded another co-worker to report to Johnson the vulgar remarks that Guillermo and his friends had been making about Gillming. In March and April 1992, other incidents occurred, some of which Gillming reported to her supervisors.

Gillming had been having pain in her hands because of her job as a trimmer, and she was moved to work as a grader for a time. In May 1992, however, she was demoted to the position of floor person, and her pay was cut. Gillming's work as a floor person required her to bend over to pick up chicken parts that had fallen to the floor. Guillermo and other co-workers threw chicken skin at her as she did so. They also called her names such as "Barnyard Brenda." Other incidents occurred, which Gillming reported to her supervisors, and she was threatened by co-workers for reporting the incidents.

On May 29, 1992, Gillming was told to report to Johnson's office because Guillermo had made a complaint about her. Both Guillermo and Gillming discussed their complaints. Gillming testified that Johnson told her that if she continued to complain she would "hit the road." Gillming wrote a letter to Roger Brune, Simmons' Vice-President of Personnel, on May 29, 1992, detailing the incidents. She followed with a second letter dated June 2. Johnson also reported the situation to Brune. Brune instructed Johnson to take statements from co-workers, and Brune interviewed both Guillermo and Gillming on June 9. Brune found there was no clear fault and that inappropriate behavior had been demonstrated by both sides. Simmons determined that both Guillermo and Gillming should be retained, but that each should be issued a warning that future similar conduct could result in termination. Gillming, however, had already resigned her job.

Gillming filed a charge of discrimination with the Missouri Commission on Human Rights (MCHR) on July 31, 1992, setting out the February 7 and 21, 1992, incidents. She filed her complaint in the district court on October 25, 1993, after receiving her right-to-sue letter. In her complaint, Gillming described the incidents occurring in February and alleged that Simmons discriminated against her by demoting her and placing her on the night shift in retaliation for complaining about the harassment. She also alleged that she "resigned her employment with Defendant on account of the continuing sexual harassment she suffered." She alleged violations of Title VII, the MHRA, and state common law.

The district court granted Simmons summary judgment on Gillming's retaliation and common law claims. The case was then submitted to the jury to determine whether Gillming had suffered sexual harassment and whether she was constructively discharged.

The jury returned a verdict in favor of Simmons on the sexual harassment claim and in favor of Gillming on the constructive discharge claim. The jury awarded Gillming $33,000 in back pay and $1 in damages. The court then granted Simmons' motion for judgment as a matter of law on the constructive discharge claim, finding that "[t]he evidence presented at trial [was] insufficient to support a conclusion that plaintiff's working conditions were intolerable when she quit." Gillming filed a motion for a new trial, which the court denied.

Gillming argues on appeal that: (1) the district court erred in giving Instruction No. 9, in that the instruction (a) erroneously required the jury to find that the harassment was "sexually motivated"; (b) erroneously used a "reasonable person," rather than a "reasonable woman" standard; and (c) erroneously required Gillming to assume the burden of proving that Simmons failed to take proper remedial action; and (2) the district court erroneously excluded certain evidence relating to a hostile work

environment.  Gillming does not challenge the district court's grant of judgment as a matter of law to Simmons.

## II.

We review the district court's formulation of jury instructions for an abuse of discretion.  <u>Transport Ins. Co. v. Chrysler Corp.</u>, 71 F.3d 720, 723 (8th Cir. 1995).  We must determine "`whether the instructions, taken as a whole and viewed in light of the evidence and applicable law, fairly and adequately submitted the issues in the case to the jury.'"  <u>Sherbert v. Alcan Aluminum Corp.</u>, 66 F.3d 965, 968 (8th Cir. 1995) (quoting <u>Jones v. Board of Police Comm'rs</u>, 844 F.2d 500, 504 (8th Cir. 1988), <u>cert. denied</u>, 490 U.S. 1092 (1989)).

Instruction No. 9 reads as follows:

Your verdict must be for the Plaintiff on her sexual harassment hostile work environment claim, if you find that plaintiff has proved, by a preponderance of the evidence, that:

First:  Plaintiff suffered from discrimination because of her sex by the intentional conduct of her fellow employees consisting of unwelcome sexually motivated conduct, such as unwelcome sexual propositions, sexual innuendo, sexually derogatory language, or other conduct which was directed at plaintiff because she is female;

Second:  This alleged conduct was pervasive and regular;

Third:  The alleged conduct detrimentally affected Plaintiff;

Fourth:  The conduct would have detrimentally affected a reasonable person in Plaintiff's position;

Fifth:  Management level employees knew, or should have known, of the alleged sexual harassment described above;

Sixth:  Management level employees failed to implement proper remedial action.

If any of the above elements have not been proved by a preponderance of the evidence, your verdict must be for the defendant and you need not proceed further in considering this claim.

Pointing to the first paragraph of the instruction, Gillming argues that Instruction No. 9 erroneously required the jury to find that the harassment was sexually motivated in order to find for her on her sexual harassment claim.[2]

We agree with Gillming that "[t]he predicate acts which support a hostile-environment sexual-harassment claim need not be explicitly sexual in nature." Kopp v. Samaritan Health Sys., Inc., 13 F.3d 264, 269 (8th Cir. 1993). It is sufficient that "`members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed.'" Id. (quoting Harris v. Forklift Sys., Inc., 114 S. Ct. 367, 372 (1993) (Ginsburg, J., concurring)). We do not believe, however, that the jury instruction given by the district court required a finding that the acts were "explicitly sexual in nature."

In response to Gillming's objection to the words "sexually motivated conduct" in the instruction, the court added "or other conduct which was directed at plaintiff because she is female." We believe that this additional language sufficiently explained to the jury that "sexually motivated" meant only that the conduct needed to be directed at Gillming because of her sex and that thus the instruction fairly and adequately submitted the claim to the jury.

Gillming next argues that the district court erroneously used a "reasonable person" rather than a "reasonable woman" standard in determining whether her reactions to the incidents were reasonable. We have found that the "reasonable woman" standard should be used

---

[2]Title VII and the MHRA apply the same analysis. See Finley v. Empiregas, Inc., 975 F.2d 467, 473 (8th Cir. 1992).

-6-

in hostile environment litigation based on sex.  Burns v. McGregor Elec. Indus., 989 F.2d 959, 962 n.3 (8th Cir. 1993) ("[B]ehavior a reasonable woman would find objectionable may be actionable `even if many people deem it to be harmless or insignificant.'")  Post-Burns, however, the Supreme Court has employed the "reasonable person" standard in a hostile work environment case.  Harris, 114 S. Ct. at 370 ("Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment -- an environment that a reasonable person would find hostile or abusive -- is beyond Title VII's purview.")

Courts of appeals addressing the issue after Harris have used a "reasonable person" standard.  See DeAngelis v. El Paso Mun. Police Officers Ass'n, 51 F.3d 591, 594 (5th Cir.), cert. denied, 116 S. Ct. 473 (1995); Fuller v. City of Oakland, Cal., 47 F.3d 1522, 1527 (9th Cir. 1995); Dey v. Colt Constr. & Dev. Co., 28 F.3d 1446, 1454 (7th Cir. 1994); King v. Hillen, 21 F.3d 1572, 1582 (Fed. Cir. 1994).  Given the Supreme Court's use of the "reasonable person" standard, we cannot find that the district court abused its discretion in using that standard in its jury instruction.

Gillming argues that Instruction No. 9 erroneously required her to assume the burden of proving that Simmons failed to take proper remedial action.  Gillming argues that proper remedial action was an affirmative defense specifically raised by Simmons in its answer to her complaint.

Regardless of whether Simmons raised the issue as a defense in answering Gillming's complaint, the issue of remedial action has consistently been held to be an element that the plaintiff must prove to establish a prima facie case of hostile environment harassment.  See Callanan v. Runyun, 75 F.3d 1293, 1296 (8th Cir. 1996) (part of prima facie case that employer "`knew or should have known of the harassment and failed to take proper remedial action.'") (quoting Kopp, 13 F.3d at 269).  Thus, the district

-7-

court properly instructed the jury that Gillming bore the burden of proving that Simmons failed to take proper remedial action.

## III.

Gillming also argues that the district court erred in excluding incidents of sexual harassment that she suffered prior to February 7, 1992. The district court has broad discretion in ruling on the admissibility of proffered evidence, and we review the court's decision for an abuse of that discretion. Triton Corp. v. Hardrives, Inc., 85 F.3d 343, 346 (8th Cir. 1996).

Gillming argues that the pre-February incidents should have been admitted as further proof of the hostile work environment because they were "like or reasonably related to" the incidents Gillming listed in her complaint. We note that evidence of a hostile environment must not be compartmentalized, but must instead be based on the totality of circumstances of the entire hostile work environment. See Burns v. McGregor Elec. Indus., Inc., 955 F.2d 559, 564 (8th Cir. 1992).

The pre-February incidents, however, were properly excluded for another reason. Gillming was specifically asked by Simmons' attorneys in her deposition about the first incident of sexual harassment that she recalled happening. Gillming responded that the first incident she was complaining of was the incident with Guillermo on February 7, 1992. Simmons contended at trial that it would be prejudiced by the introduction of evidence that it did not know it must defend against. We agree that Simmons should not have to defend against such evidence. See Abbey v. Control Data Corp., 933 F.2d 616, 621-22 (8th Cir. 1991) (defendants rightly claimed prejudice from surprise testimony). "One of the primary objectives of the Federal Rules of Civil Procedure is to eliminate the element of `surprise' from the trial of civil cases." Nutt v. Black Hills Stage Lines, Inc., 452 F.2d 480, 483 (8th Cir. 1971). Thus, the

district court did not abuse its discretion in excluding the evidence.

Gillming also argues that the district court erred in excluding evidence that Simmons failed to communicate its harassment policy to its non-English speaking Hispanic employees. Gillming attempted to introduce evidence at several points during the trial that Hispanic employees were the ones who threw chicken skins at her and called female employees names, that female employees were warned to stay away from Hispanic employees, and that the Hispanic employees did not speak English. The district court excluded the evidence as lacking sufficient relevance to the central issue of the case under Federal Rule of Evidence 402, and as unduly prejudicial under Federal Rule of Evidence 403. Although blanket evidentiary exclusions based on relevance grounds are not favored in discrimination cases, to be admissible the evidence must assist in developing a reasonable inference of discrimination. Callanan, 75 F.3d at 1297-98.

In some circumstances, evidence that an employer warns women to conduct themselves differently around certain employees may constitute relevant evidence that the employer knew of harassing conduct from those employees. See Kopp, 13 F.3d at 268 & n.1. Evidence that a sexual harassment policy was not communicated to employees in a way they could understand may also be relevant to prove that an employer did not take proper remedial action.

In this case, however, the district court did not abuse its discretion in excluding the evidence as irrelevant and unduly prejudicial. Gillming argues that the proffered evidence "established that Hispanic males demonstrated a poor attitude toward women." This is precisely the reason for which the Kopp court warns the evidence should not be used. Id. at 268 n.1 (improper to draw any inference about harasser's motivation from his ethnic background). Gillming focused more on the nationality

of the employees than on the fact that they did not speak English.  In addition, the fact that Gillming had placed notices prior to trial requesting information "concerning possible Simmons employment of illegal aliens" led the court to believe the information would be admitted for an improper purpose.  The court did not make the type of blanket exclusion that concerned us in <u>Callanan</u>.  We thus find no abuse of discretion in the court's exclusion of the evidence.

The judgment is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.