Dennis JONES, Plaintiff,

v.

UNITED STATES GYPSUM,
Defendant.

No. C99–3047–MWB.

United States District Court,
N.D. Iowa,
Central Division.

Nov. 20, 2000.

Blake Parker, Fort Dodge, IA, for plaintiff.

Norma W. Zeitler, McDermott, Will & Emery, Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

BENNETT, Chief Judge.

TABLE OF CONTENTS

I. *INTRODUCTION* ...................................................1173

A.  *Procedural Background* ...........................................1173
   B.  *Factual Background* ..............................................1173

II.  *LEGAL ANALYSIS* ....................................................1175
   A.  *Standards For Summary Judgment*.............................1175
   B.  *Hostile Work Environment Claim* .............................1177
      1.  *The prompt remedial action requirement*............................1178
      2.  *USG's response to the incident* ...............................1179

III.  *CONCLUSION* ......................................................1180

## I.  INTRODUCTION

### A.  Procedural Background

On June 7, 1999, plaintiff Dennis Jones filed this sex discrimination lawsuit against his former employer, United States Gypsum ("USG").  Jones was employed as a supervisor at USG's plant in Fort Dodge, Iowa. Jones alleges in his complaint that he was subjected to sexual harassment during his employment with USG. Specifically, Jones alleges that he was subjected to sexual discrimination in the form of a hostile work environment, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

On August 30, 2000, USG filed a motion for summary judgment.  In its motion, USG asserts that there are no genuine issues of material fact and argues that Jones cannot establish a hostile work environment sexual discrimination claim because USG took prompt remedial action as soon as the objected to incident was reported.  Alternatively, USG contends that summary judgment should be granted on its behalf because the complained of conduct did not alter a term, condition, or privilege of Jones's employment.  USG further contends that Jones cannot demonstrate that his work environment was both objectively and subjectively offensive.  Finally, USG contends that the objected to incident was not sexually based.  Jones filed a timely resistance to USG's motion. Jones responds by asserting that the individual who struck him in the groin area had engaged in other inappropriate and harassing acts in the workplace.  He contends that genuine issues of material fact have been generated which preclude the court from granting USG's motion.

The court heard oral arguments on defendant USG's motion for summary judgment on November 8, 2000.  At the oral arguments, plaintiff Jones was represented by counsel Blake Parker of the Blake Parker Law Office, Fort Dodge, Iowa. Defendant USG was represented by counsel Norma W. Zeitler of McDermott, Will & Emery, Chicago, Illinois.  The parties have filed thorough briefs in support of their respective positions.

### B.  Factual Background

The court will discuss here only the nucleus of undisputed facts pertinent to the present motion for summary judgment. In its legal analysis, the court will address where necessary Jones's assertion of genuine issues of material fact that may preclude summary judgment on his sexual harassment claim.

USG produces, *inter alia,* wall board at its Fort Dodge, Iowa, plant.  The Board Department in USG's Fort Dodge plant consists of two productions lines: Board Line One and Board Line Two. Board Line One, in turn, consists of a wet end and a dry end.  The wet end and dry end are located on separate floors within the plant with the wet end being located on the plant's upper floor and the dry end being situated on the plant's lower floor.  Jones was a supervisor at USG's Fort Dodge plant for eighteen years.  Jones worked on the wet end for nearly the entire time that he worked on the board line.  At the time of the incident at the center of this lawsuit, Jones was a wet end supervisor.  Carol Antle has worked in USG's Fort Dodge plant as an inspector on the dry end of Board Line One throughout her sixteen years of employment there.

Prior to the incident at the center of this lawsuit, Jones and Antle were on congenial terms. They engaged in friendly banter and, on occasion, went out for a beer after work. Jones would sometimes massage Antle's shoulders and put his arm around her. Jones did not consider such actions inappropriate or sexual harassment. He is not offended when coworkers hug or kiss.

In 1984, in response to an allegation by her supervisor Kenny Day that Antle was a "woman's libber," Antle yelled "the hell I am" and raised her shirt to reveal her brassiere. Upon raising her shirt, Antle declared, "I didn't burn my bra." In 1996, Jones saw Antle make a gesture toward Harvey Reimer in which it appeared that Antle was going to grab Reimer's groin area. Antle, however, did not actually touch Reimer. After the incident, Reimer's face turned red. Antle also had yelled at Danny Altman that she loved him. Following this event, Antle was told by Altman not to do that because some people would not know she was just kidding him. On another occasion, Antle placed her face up to the plant office's glass window and stuck her tongue out when Altmann and Kurt Moore were in the office. After this occurrence, Antle was told by Altmann that Moore had told him to tell Antle to keep her lips off the window. In addition, Antle gave Terry Davis a kiss on the cheek on Father's Day. Antle has also kissed other management employees. She kissed Kirk Moore when he gave her a bonus check. She also kissed Danny Altmann to thank him for scheduling her vacation. On yet another occasion, Antle kissed employee Lori Black after Black had returned from drug treatment. On a number of occasions Antle has taken out her false teeth, removed the liner from her hard hat, thus causing the hat to sit lower on her head, put her hard hat back on, placed her glasses on upside down, and then asked male employees if they "wanted to fuck." Jones reported one such incident to

Altmann. In 1998, Antle changed her shirt in open view in the plant, revealing her brassiere. Jones also reported this incident Altmann. Antle was not reprimanded for these incidents.

On July 30, 1998, Jones and Antle were working the third shift. During the shift, Jones came downstairs to the area where Antle worked. According to Jones, he told Antle that some companies where trying to get rid of older workers. At the time, Antle was 58 years old. According to Jones, in response to his statement, Antle stated that she would show him what she would do with a fifty year-old man, and grabbed Jones's left testicle and penis.[1] Antle immediately apologized to Jones and Jones returned to his work station. Shortly after the incident, Todd Lowe, a wet end supervisor, told David Ferry, the shift foreman, about the incident between Antle and Jones. Ferry talked to both Antle and Jones about the incident before the end of the shift. Jones told Ferry that Antle had hit him in the groin area but that he was uninjured. Antle told Ferry that she had grabbed Jones by the front of his pants. After the end of the shift, Jones approached Antle and Robin Rongveld as they were walking to their cars and joked with them.

The following day, Jones reported the incident to Danny Altman, the board department chairman, and Kirk Moore, the board department manager. Jones stated that Antle had hit him in the testicles and that he was experiencing pain in that part of his body. Moore subsequently reported the incident to Richard Hundley, USG's human resources manager. USG began an investigation of the incident on the same day. Moore and Altman interviewed Antle. Antle told Moore and Altman that she grabbed Jones in the belt buckle or zipper area of his pants which was a gesture for Jones to "come with me." Moore

---

**1.** According to Antle, Jones complained that USG was trying to get rid of its older employees and she responded by stating that if she was offered early retirement she would take it

and drag Jones along with her. While saying this, Antle grabbed Jones by the fly of his pants.

reported his findings to Hundley, and then he suspended Antle pending the outcome of the investigation. Moore then telephoned Lowe to ascertain what he saw. Lowe was not home at the time but later called and talked to Altman. Lowe reported that he had not seen the incident. Moore reviewed Antle's personnel file to determine if she had been disciplined in the past and met with Hundley and Davis to discuss what action should be taken. Hundley reported the incident to Terry Davis, the plant manager. Hundley also made an appointment for Jones for later that day with a physician USG uses to examine injured employees.

Once Moore completed his investigation of the incident between Antle and Jones, he met with Davis and Hundley to report his findings. They decided that discipline was called for because of the incident and summoned Antle for a meeting. Moore, Davis, and Hundley subsequently met with Antle to review the incident and to decide what sanctions to impose. At the meeting. Antle was asked about what had transpired between her and Jones. Antle replied that Jones had come to her and made a comment that USG was getting rid of older workers. In response to Jones's comment, Antle said she had grabbed Jones in the belt area. Davis concluded that Antle had engaged in horseplay with Jones and in doing so had violated USG's Quality of Workplace policy by her inappropriate contact with Jones. Davis suspended Antle for four days without pay, transferred her to a different shift, issued a written disciplinary warning, and orally warned her that her employment would be terminated if she engaged in that type of conduct in the future.

Antle has not engaged in such conduct again. Antle has not worked on the same shift as Jones. She has talked to Jones only once since returning from her suspension, when Jones was acting as the relief foreman and he had another worker call Antle into work. Jones resigned his employment with USG on February 17, 1999.

## II. LEGAL ANALYSIS

### A. Standards For Summary Judgment

This court has considered in some detail the standards applicable to motions for summary judgment pursuant to FED. R. CIV. P. 56 in a number of prior decisions. *See, e.g., Swanson v. Van Otterloo,* 993 F.Supp. 1224, 1230–31 (N.D.Iowa 1998); *Dirks v. J.C. Robinson Seed Co.,* 980 F.Supp. 1303, 1305–07 (N.D.Iowa 1997); *Laird v. Stilwill,* 969 F.Supp. 1167, 1172–74 (N.D.Iowa 1997); *Rural Water Sys. # 1 v. City of Sioux Ctr.,* 967 F.Supp. 1483, 1499–1501 (N.D.Iowa 1997), *aff'd in pertinent part,* 202 F.3d 1035 (8th Cir.2000); *Tralon Corp. v. Cedarapids, Inc.,* 966 F.Supp. 812, 817–18 (N.D.Iowa 1997), *aff'd,* 205 F.3d 1347 (8th Cir.2000) (Table op.); *Security State Bank v. Firstar Bank Milwaukee, N.A.,* 965 F.Supp. 1237, 1239–40 (N.D.Iowa 1997); *Lockhart v. Cedar Rapids Community Sch. Dist.,* 963 F.Supp. 805 (N.D.Iowa 1997). Thus, the court will not consider those standards in detail here.

Suffice it to say that Rule 56 itself provides, in pertinent part, as follows:

Rule 56. Summary Judgment

(b) For Defending Party. A party against whom a claim ... is asserted ... may, at any time, move for summary judgment in the party's favor as to all or any part thereof.

(c) Motions and Proceedings Thereon.... *The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*

FED. R. CIV. P. 56(b) & (c) (emphasis added). Applying these standards, the trial judge's function at the summary judgment stage of the proceedings is not to weigh the evidence and determine the truth of the matter, but to determine whether there are genuine issues for trial. *Quick v. Donaldson Co.,* 90 F.3d 1372,

1376–77 (8th Cir.1996); *Johnson v. Enron Corp.*, 906 F.2d 1234, 1237 (8th Cir.1990). An issue of material fact is genuine if it has a real basis in the record. *Hartnagel v. Norman*, 953 F.2d 394 (8th Cir.1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). As to whether a factual dispute is "material," the Supreme Court has explained, "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir.1995); *Hartnagel*, 953 F.2d at 394. If a party fails to make a sufficient showing of an essential element of a claim with respect to which that party has the burden of proof, then the opposing party is "entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *In re Temporomandibular Joint (TMJ) Implants Prod. Liab. Litig.*, 113 F.3d 1484, 1492 (8th Cir.1997). In reviewing the record, the court must view all the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences that can be drawn from the facts. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. 1348; *Quick*, 90 F.3d at 1377 (same).

Because this is an employment discrimination case, it is well to remember that the Eighth Circuit Court of Appeals has cautioned that "summary judgment should seldom be used in employment-discrimination cases." *Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th Cir.1994) (citing *Johnson v. Minnesota Historical Soc'y*, 931 F.2d 1239, 1244 (8th Cir.1991); *Hillebrand v. M–Tron Indus., Inc.*, 827 F.2d 363, 364 (8th Cir.1987), *cert. denied*, 488 U.S. 1004, 109 S.Ct. 782, 102 L.Ed.2d 774 (1989)); *see also Snow v. Ridgeview Med. Ctr.*, 128 F.3d 1201, 1205 (8th Cir.1997) (citing *Crawford*); *Helfter v. United Parcel Serv., Inc.*, 115 F.3d 613, 615 (8th Cir. 1997) (quoting *Crawford*); *Chock v. Northwest Airlines, Inc.*, 113 F.3d 861, 862 (8th Cir.1997) ("We must also keep in mind, as our court has previously cautioned, that summary judgment should be used sparingly in employment discrimination cases," citing *Crawford*); *Smith v. St. Louis Univ.*, 109 F.3d 1261, 1264 (8th Cir. 1997) (quoting *Crawford*); *Hardin v. Hussmann Corp.*, 45 F.3d 262 (8th Cir. 1995) ("summary judgments should only be used sparingly in employment discrimination cases," citing *Haglof v. Northwest Rehabilitation, Inc.*, 910 F.2d 492, 495 (8th Cir.1990); *Hillebrand*, 827 F.2d at 364). Summary judgment is appropriate in employment discrimination cases only in "those rare instances where there is no dispute of fact and where there exists only one conclusion." *Johnson*, 931 F.2d at 1244; *see also Webb v. St. Louis Post–Dispatch*, 51 F.3d 147, 148 (8th Cir.1995) (quoting *Johnson*, 931 F.2d at 1244); *Crawford*, 37 F.3d at 1341 (quoting *Johnson*, 931 F.2d at 1244). To put it another way, "[b]ecause discrimination cases often depend on inferences rather than on direct evidence, summary judgment should not be granted unless the evidence could not support any reasonable inference for the nonmovant." *Crawford*, 37 F.3d at 1341 (holding that there was a genuine issue of material fact precluding summary judgment); *accord Snow*, 128 F.3d at 1205 ("Because discrimination cases often turn on inferences rather than on direct evidence, we are particularly deferential to the nonmovant," citing *Crawford*); *Webb v. Garelick Mfg. Co.*, 94 F.3d 484, 486 (8th Cir.1996) (citing *Crawford*, 37 F.3d at 1341); *Wooten v. Farmland Foods*, 58 F.3d 382, 385 (8th Cir.1995) (quoting *Crawford*, 37 F.3d at 1341); *Johnson*, 931 F.2d at 1244.

However, the Eighth Circuit Court of Appeals has also observed that, "[a]lthough summary judgment should be used sparingly in the context of employment discrimination cases, *Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th Cir.1994), the plaintiff's evidence must go beyond the establishment of a prima facie case to sup-

port a reasonable inference regarding the alleged illicit reason for the defendant's action." *Landon v. Northwest Airlines, Inc.,* 72 F.3d 620, 624 (8th Cir.1995) (citing *Reich v. Hoy Shoe Co.,* 32 F.3d 361, 365 (8th Cir.1994)). Furthermore, "[s]ummary judgment is proper when a plaintiff fails to establish a factual dispute on an essential element of her [or his] claim." *Snow,* 128 F.3d at 1205; *accord Helfter,* 115 F.3d at 615; *Bialas v. Greyhound Lines, Inc.,* 59 F.3d 759, 762 (8th Cir. 1995). As counsel for Frigidaire pointed out, the Eighth Circuit Court of Appeals has still more recently stated that "this cautionary approach ... 'cannot and should not be construed to exempt' from summary judgment employment discrimination cases involving intent." *Christopher v. Adam's Mark Hotels,* 137 F.3d 1069, 1071 (8th Cir.1998) (quoting *Krenik v. County of Le Sueur,* 47 F.3d 953, 959 (8th Cir.1995)). This is so, because "[i]f there is no genuine issue about the employer's discriminatory intent, to the extent intent is material, then summary judgment may be appropriate." *Id.* With these standards in mind, the court turns to consideration of the defendants' motion for summary judgment on Jones's sexual harassment claim.

### B. Hostile Work Environment Claim

Jones has asserted a claim of sexual harassment based upon a hostile work environment. The five elements of a hostile work environment claim are that:

> (a) she is a member in a protected group; (b) she was subject to unwelcome sexual harassment; (c) the harassment was based on sex; (d) the harassment affected a term, condition, or privilege of employment; and (e) the employer knew or should have known of the harassment and failed to take proper remedial action.

*Stuart v. General Motors Corp.,* 217 F.3d 621, 631 (8th Cir.2000); *accord Klein v. McGowan,* 198 F.3d 705, 709 (8th Cir. 1999)("that (1) he is a member of a protected group; (2) unwelcome harassment occurred; (3) a causal nexus existed between the harassment and his protected group status; (4) the harassment affected a term, condition, or privilege of employment; and (5) his employer knew or should have known of the harassment and failed to take prompt and effective remedial action."); *Scusa v. Nestle U.S.A., Co.,* 181 F.3d 958, 965 (8th Cir.1999) ("that (a) she belongs to a protected group; (b) that she was subject to unwelcome sexual harassment; (c) that the harassment was based on sex; (d) that the harassment affected a term, condition, or privilege of employment; and (e) that the employer knew or should have known of the harassment and failed to take proper remedial action."); *Howard v. Burns Bros., Inc.,* 149 F.3d 835, 840 (8th Cir.1998) ("To prove that she was subjected to a hostile work environment in violation of Title VII, [plaintiff] had to show that: '(1) she belongs to a protected group; (2) she was subject to unwelcome sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of employment; and (5) [defendants] knew or should have known of the harassment and failed to take proper remedial action.' ") (quoting *Kopp v. Samaritan Health Sys., Inc.,* 13 F.3d 264, 269 (8th Cir.1993)); *Bales v. Wal–Mart Stores, Inc.,* 143 F.3d 1103, 1106 (8th Cir. 1998) ("There are five elements that [plaintiff] was required to prove to prevail on her claim: that she was a member of a protected group, that she was subjected to unwelcome harassment in the workplace, that the harassment was based on sex, that the harassment affected a 'term, condition, or privilege of employment,' and that [defendant] "knew or should have known of the harassment and failed to take proper remedial action." ') (quoting *Todd v. Ortho Biotech, Inc.,* 138 F.3d 733, 736 (8th Cir.1998)); *Callanan v. Runyun,* 75 F.3d 1293, 1296 (8th Cir.1996) (" '(1) she belongs to a protected group; (2) she was subject to unwelcome sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of employment; and (5) [her

employer] knew or should have known of the harassment and failed to take proper remedial action."') (quoting *Kopp,* 13 F.3d at 269)).

The United States Supreme Court has instructed that in order for a work environment to be actionable, a "sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton,* 524 U.S. 775, 787, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (citing *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21–22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). When determining whether the alleged conduct rises to an actionable level, a court must examine "the circumstances" including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 787–88, 118 S.Ct. 2275 (quotations and citation omitted). The standards for judging hostility must be "sufficiently demanding to ensure that Title VII does not become a 'general civility code.'" *Id.* at 788, 118 S.Ct. 2275 (citation omitted).

Keeping these requirements in mind, the court turns its attention to consideration of USG's assertion that Jones cannot establish a hostile work environment sexual discrimination claim because USG took prompt remedial action as soon as the objected to incident was reported.

### 1. *The prompt remedial action requirement*

■ The Eighth Circuit Court of Appeals has instructed that "[o]nce an employee complains to her employer about sexual harassment by a coworker, the employer is on notice and must take proper remedial action to avoid liability under Title VII." *Hathaway v. Runyon,* 132 F.3d 1214, 1222 (8th Cir.1997) (citing *Davis v. Tri–State Mack Distrib., Inc.,* 981 F.2d 340, 343 (8th Cir.1992)); *Zirpel v. Toshiba Am. Info. Sys., Inc.,* 111 F.3d 80, 81 (8th Cir.1997) (finding an employer must take prompt remedial action after it knew or should have known of harassment). In addition to conducting an investigation, the employer must take "'prompt remedial action reasonably calculated to end the harassment.'" *Hathaway,* 132 F.3d at 1222 (citing *Davis,* 981 F.2d at 343); *Zirpel,* 111 F.3d at 81 (holding that summary judgment was properly granted in an employer's favor because the employer "promptly took 'remedial action … reasonably calculated to end the harassment"' once it knew or should have known about a harassing co-employee's behavior, citing *Kopp v. Samaritan Health Sys., Inc.,* 13 F.3d 264, 269 (8th Cir.1993)). The employer cannot avoid liability by doing nothing simply because the co-worker denies that the harassment occurred. *Hathaway,* 132 F.3d at 1222 (citing *Fuller v. City of Oakland,* 47 F.3d 1522, 1529 (9th Cir.1995)). Indeed, an employer may take remedial action even where a complaint is uncorroborated. *Hathaway,* 132 F.3d at 1222 (citing *Knabe v. Boury Corp.,* 114 F.3d 407, 409, 413 & n. 11 (3d Cir.1997)).

The Eighth Circuit Court of Appeals has observed that factors a court may consider when assessing the reasonableness of an employer's remedial measures include:

> the amount of time elapsed between the notice of harassment, which includes but is not limited to a complaint of sexual harassment, and the remedial action, and the options available to the employer such as employee training sessions, disciplinary action taken against the harasser(s), reprimands in personnel files, and terminations, and whether or not the measures ended the harassment.

*Stuart,* 217 F.3d at 633 (citing *Carter v. Chrysler Corp.,* 173 F.3d 693, 702 (8th Cir.1999). Options for appropriate remedial action include taking disciplinary action to stop the harassment; transferring the alleged harasser to a different area where he or she would not come in contact with the complainant; scheduling the individuals involved on different shifts; put-

ting a signed written warning or reprimand in personnel files; or placing the offending employee on probation pending any further complaints. *Hathaway,* 132 F.3d at 1222 (citing *Knabe,* 114 F.3d at 413; *Zirpel,* 111 F.3d at 81; *Intlekofer v. Turnage,* 973 F.2d 773, 780 & n. 9 (9th Cir.1992); *Ellison v. Brady,* 924 F.2d 872, 881–82 (9th Cir.1991); *Barrett v. Omaha Nat'l Bank,* 726 F.2d 424, 426 (8th Cir. 1984)).

### 2. USG's response to the incident

■ The court concludes that USG's response to Jones's complaint regarding the incident with Antle was undisputably "reasonably calculated to end the harassment." *Hathaway,* 132 F.3d at 1222 (the employer must take prompt remedial action reasonably calculated to end the harassment). Here, upon being apprised of the incident by Jones, USG began an investigation of the incident that very day. After interviewing Antle about the incident, she was immediately suspended pending the outcome of the investigation. Once Moore completed his investigation of the incident between Antle and Jones, it was determined that discipline was called for because of the incident. Moore, Davis, and Hundley subsequently met with Antle to review the incident and to determine the appropriate sanctions to impose. Davis suspended Antle for four days without pay, transferred her to a different shift, issued a written disciplinary warning, and orally warned her that her employment would be terminated if she engaged in that type of conduct in the future. Antle has not engaged in such conduct again and Antle has not worked on the same shift as Jones.

Jones contends that while USG's remedial action may have been adequate in response to Antle's assault on him, it was inadequate with respect to Antle's actions which predated the incident. He contends USG failed to take adequate remedial action in response to Antle's prior conduct in which she kissed a number of her supervisors, lifted her shirt to reveal her brassiere, made a gesture toward Reimer in which it appeared that Antle was going to grab Reimer's groin area, yelled at Altman that she loved him, placed her face up to the glass window of the plant office, and asked male employees if they "wanted to fuck" after she had removed her false teeth and the liner from her hard hat, and placed her glasses on upside down. Jones argues that Antle's prior antics should have placed USG on notice that Antle would assault him in an inappropriate manner. Thus, Jones argues that Antle's assault upon him could have been prevented if USG had taken proper remedial measures in response to Antle's prior actions.

■ There is no evidence in the record that Antle's prior actions should have placed USG on notice of possible sexually assaultive conduct by Antle. *See Jeffries v. Kansas,* 147 F.3d 1220, 1229 (10th Cir. 1998) (holding that employer liability may be imputed based on knowledge of harassment similar in nature and near in time); *Hirase–Doi v. U.S. West Communications, Inc.,* 61 F.3d 777, 784 (10th Cir.1995) (same). Here, there is no evidence that USG should have sanctioned Antle more severely for her prior conduct. The court notes that these isolated incidents occurred over the span of sixteen years. "[W]hat is reasonable depends on the gravity of the harassment.... [A]n employer is required to take more care, other things being equal, to protect its ... employees from serious sexual harassment than to protect them from trivial harassment." *Baskerville v. Culligan Int'l Co.,* 50 F.3d 428, 432 (7th Cir.1995). Jones never reported that he viewed Antle's occasional kissing of members of USG's management and a female co-employee to be objectionable. Indeed, the Seventh Circuit Court of Appeal has held that such actions as a "peck on the cheek" lie at the end of the spectrum of actions that typically will not be severe enough in and of themselves to be actionable under Title VII as hostile environment sexual harassment. *Hostetler v. Quality Dining, Inc.,* 218 F.3d 798, 808 (7th Cir.2000). Moreover, Antle was given oral reprimands for two of her ac-

tions, sticking her tongue out and yelling that she loved Altmann. On each occassion, Antle did not repeat the objected to conduct. In response to USG's motion for summary judgment, Jones filed an affidavit in which he claims that he reported Antle for changing her shirt in full view of her co-employees and for asking him if he "wanted to f-."[2] First, Jones did not aver in his affidavit that he found Antle's actions on these two occasions to be objectionable. Indeed, Jones's affidavit does not disclose why he reported these incidents to Altman. In addition, with respect to Antle's act of changing her shirt, which otherwise does not appear in the record, such conduct in no way portends that Antle would subsequently engage in assaultive conduct.[3] Although Jones points to the episode in which Antle made a gesture like he was going to grab Reimer in the groin, Jones admits in his deposition that he does not know the nature of the conversation when Antle made her gesture toward Reimer. More importantly, Antle did not physically come into contact with Reimer. Indeed, the only physical contact noted in the record between Antle and Jones prior to the incident giving rise to this lawsuit is of Jones rubbing Antle's shoulders.

The evidence submitted to the court establishes that USG properly and promptly responded to Jones's complaint regarding the incident with Antle. USG not only took steps reasonably calculated to stop the harassment—all that the law requires—but rather stopped the harassment as a matter of fact. The court concludes that the steps taken by USG constitute prompt and effective action of the degree necessary, by any extant standard, to negate Title VII liability. Defendant USG, therefore, is entitled to summary judgment on Jones's hostile work environment claim.

2. The circumstances of this exchange are not disclosed in Jones's affidavit. The court assumes that Antle, as on previous occasions, asked Jones if he "wanted to fuck" after she had removed her false teeth and the liner

## III. CONCLUSION

The court concludes that USG is entitled to summary judgment on Jones's claim of employer liability for permitting a sexually hostile environment. The undisputed record reveals that USG responded promptly and decisively to Jones's complaint regarding the incident with Antle by beginning an investigation of the incident the day it was reported, immediately suspended Antle pending the outcome of the investigation, and, once the investigation was done, suspended Antle for four days without pay, transferred her to a different shift, issued a written disciplinary warning, and orally warned her that her employment would be terminated if she engaged in that type of conduct in the future. Therefore, USG's motion for summary judgment is granted as to Jones's claim of a hostile environment.

**IT IS SO ORDERED.**

from her hard hat, and placed her glasses on upside down.

3. Antle denied in her deposition that she had ever taken off her shirt in front of other employees. Antle Dep. at 55.