Diana Lynn HANNA, Plaintiff,

v.

BOYS AND GIRLS HOME AND FAMI-
LY SERVICES, INC., Boys and Girls
Home Residential Treatment Centers,
Inc., and Boys and Girls Home of Ne-
braska, Inc., Defendants.

No. C01–4029–MWB.

United States District Court,
N.D. Iowa,
Western Division.

July 9, 2002.

As Amended July 30, 2002.

Stanley E. Munger, Jay Elliott Denne, Munger, Reinschmidt & Denne, Sioux City, IA, for plaintiff.

Patrick M. Flood, Hotz, Weaver, Flood & Breitkreutz, Omaha, NE, for defendants.

## MEMORANDUM OPINION AND OR-DER REGARDING DEFEN-DANTS' MOTION FOR SUMMARY JUDGMENT

BENNETT, Chief Judge.

### TABLE OF CONTENTS

I. *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1052
 A. *Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1052
 B. *Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1053

II. *LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1055
 A. *Standards For Summary Judgment* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1055
 1. *Requirements of Rule 56* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1056
 2. *The parties' burdens* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1056
 3. *Summary judgment in employment discrimination cases* . . . . . . . . . . . . .1057
 B. *Hanna's Sexual Harassment Claim—Hostile Work Environment* . . . . . . . . .1058
 1. *Effect on employment* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1060
 2. *Prompt remedial action requirement* . . . . . . . . . . . . . . . . . . . . . . . . . . .1062
 C. *Retaliation Claim* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1065
 1. *Adverse employment action* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1067
 2. *Causal connection* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1067

III. *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1069

### I. INTRODUCTION

#### A. Procedural Background

On March 22, 2001, plaintiff Diana Lynn Hanna ("Hanna") filed a complaint against her former employer, defendant Boys and Girls Home and Family Services, Inc., Boys and Girls Home Residential Treatment Centers, Inc., and Boys and Girls Home of Nebraska, Inc. (collectively, "Boys and Girls Home") alleging violation of 42 U.S.C. § 2000e *et seq.*, commonly referred to as Title VII of the Civil Rights Act of 1964. In her complaint, Hanna alleges she was subjected to a sexually hostile work environment at the hands of her non-supervisory co-workers and that her employment was terminated in retaliation for engaging in protected activity to remedy the alleged sexual harassment.[1]

---

1. Hanna alleges in her complaint and resistance to summary judgment that Boys and Girls Home supervisors, Nicki Decker and Jodi Mattson, contributed to the hostile work environment as evidenced by their response, or lack thereof, to her reports of sexual harassment by Cornell Lowery. Rather, at this time, the court interprets these allegations as proof that defendant, Boys and Girls

Boys and Girls Home answered Hanna's complaint on May 22, 2001, denying all of these claims.[2]

On April 22, 2002, Boys and Girls Home filed a motion for summary judgment on all counts. In its motion, Boys and Girls Home asserts Hanna cannot establish a *prima facie* case of sexual harassment by both her non-supervisory co-workers and supervisors because the alleged conduct did not rise to a level of severity or pervasiveness so as to alter her employment conditions and create an objectively hostile work environment. Boys and Girls Home contends that, even if the conduct was sufficiently severe or pervasive, it took proper remedial action entitling it to judgment as a matter of law. In addition, Boys and Girls Home, in its reply on May 20, 2002, to Hanna's resistance filed May 13, 2002, asserts that the allegedly hostile behavior of co-workers and supervisors, other than one Cornell Lowery ("Lowery") for purposes of this motion, were not based on her sex. Boys and Girls Home further argues that, even if Hanna is able to make out a *prima facie* case of retaliation, it is entitled to summary judgment because Boys and Girls Home terminated Hanna's employment for a legitimate, non-discriminatory reason. Before discussing the standards for Boys and Girls Home's motion for summary judgment, the court will first examine the factual background established by the summary judgment record.

### B. Factual Background

The following facts are either undisputed or viewed in the light most favorable to plaintiff Hanna as the nonmoving party. Hanna began working as a residential guidance counselor for conduct disorder male adolescents on April 3, 2000, at Boys and Girls Home's Elkhorn, Nebraska Unit until Boys and Girls terminated her employment on June 27, 2000. Hanna claims that, approximately two weeks after she started working for Boys and Girls Home, a co-worker, Cornell Lowery, also a residential guidance counselor, began directing sexual advances and gestures towards her. Hanna claims that in April of 2000, Lowery approached her in a hallway, grabbed the cheeks of his buttocks and simultaneously thrusted his groin at her. As Lowery did this, Hanna claims he stated "I know you like that. I know you were watching me. You want that." Deft.'s App., at 0027; Dep. Hanna, at 32:18–20. The second alleged incident occurred the following day. Lowery continually commented, in the presence of clients, about Hanna's appearance and the black jeans she was wearing. In addition, Lowery proceeded to make remarks such as "Oooh, look at that girl go, oooh." Deft.'s App., at 0029; Dep. Hanna, at 34:12–16. Hanna repeatedly implored Lowery to leave her alone throughout their shift.

On or around April 27, 2000, Hanna verbally complained to her supervisor at Boys and Girls Home, Nicki Decker ("Decker"), that Lowery was subjecting her to unwelcome sexual conduct. Thereafter, Hanna claims, over the course of one week, Lowery continually commented about her clothing, such as a blouse she wore, and the way she walked. According

---

Home, knew or should have known of the sexual harassment by Hanna's non-supervisory co-workers.

**2.** Boys and Girls Home suggests that the two prong affirmative defense set forth by the United States Supreme Court in *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct.

2257, 141 L.Ed.2d 633 (1998), and *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998), may be applicable. However, at this time, the court reads Hanna's complaint and the summary judgment record as alleging only non-supervisory co-worker harassment making the affirmative defense irrelevant.

to Hanna, Lowery told her she was strutting in such a way that indicated to him that Hanna wanted him. Hanna attempted to inform Decker about Lowery's behavior, but Decker merely told Hanna that she had spoken with Lowery the "other day" and the conduct should come to a halt.

On another occasion, Hanna complains Lowery approached her in the parking lot outside the building of Boys and Girls Home and offered to give her a ride home. Hanna refused, and when Lowery saw Hanna's male friend arrive to pick her up. Lowery commented about his picking her up and inquired whether or not the man was her boyfriend. Thereafter, Hanna asked Lowery to leave her alone and to stop flirting with her. Hanna claims Lowery did not cease. To support this contention, Hanna avers that Lowery continued to make rude comments at work, put her down, insult and degrade her. Pltf.'s App., at 05; Dep. Hanna, at 53:1–4. Hanna alleges further that one Saturday morning, when Hanna worked a fifteen hour shift with Lowery, in the presence of all of the clients, Lowery remarked "Oooh, Diana, look at the way you blend in. You look so fine. You could never tell that you are a grandmother with that outfit on." Pltf.'s App., 07; Dep. Hanna, at 66:23–25 to 67:1–5.

While this alleged pattern of sexual harassment directed at Hanna by her co-worker, Lowery, transpired over the course of a two-week period, Hanna argues the sexual harassment continued to a lesser degree for a longer period of time. In particular, Lowery would approach Hanna and act interested in the brand of shirt she was wearing, telling her to "come here," trying to create the appearance that he was looking at her shirt when really, he would "[l]ook right at my shirt but not really at my shirt." Deft.'s App., at 0033; Dep. Hanna, at 38:11–16. In addition,

Lowery began to retaliate against Hanna for reporting his unwelcome sexual advances to Boys and Girls Home. Lowery confronted Hanna the day after his alleged meeting with Decker and yelled at Hanna, accusing her of "tattling" on him. On May 15, 2000, Hanna verbally reported to Decker that Lowery confronted her regarding Hanna's prior reports to Decker, and further that, Lowery had begun to retaliate against her. The alleged retaliatory actions included Lowery's challenging Hanna's authority in front of Boys and Girls Home clients. For instance, Hanna claims that when she would place a client in time-out, Lowery would, in turn, pull him or her out of the time-out. Generally, Hanna felt Lowery was singling her out. Deft.'s App., at 0030–31. Hanna alleged other incidents of sexual harassment and rude remarks by Lowery at this same meeting as evidence that, although the sexual advances and gestures lessened after Lowery learned that Hanna reported his unwelcome conduct to Decker, Lowery did not desist from harassing Hanna but embarked on a new wave of unwelcome conduct. Deft.'s App., at 0046–47; Dep. Decker, 28:3–6, 29:7–14. In response to Hanna's report of May 15, 2000, supervisor Decker issued a performance warning to Lowery on May 24, 2000.

On June 12, 2000, Hanna informed Decker that her working situation with Lowery had improved. However, Hanna claims Lowery continued to retaliate against her by inciting other co-workers to imitate Lowery's behavior and exhibit the same kind of hostility towards Hanna. Hanna claims that her co-worker, Jason Palsma, contributed to the hostile work environment by participating with Lowery in joking and kidding around during their shifts with Hanna and then leaving her alone to handle their unit. Lastly, Hanna claims a co-worker by the name of Camillia exhibited the same kind of hostility toward

Hanna by imitating Lowery's practice of undermining Hanna's authority and correcting her in front of Boys and Girls Home clients.

Hanna's final report of the allegedly harassing conduct was made on June 21, 2000. Hanna initiated the meeting with supervisory personnel, Decker, Jodi Mattson, and Roger Bentz, to discuss Lowery's conduct. Deft.'s App., at 0048; Dep. Decker, at 38:10–16. Hanna explained to the supervisors present the incidents as she had reported them previously, as well as Lowery's retaliatory conduct toward her and its effect on her ability to work, the most damaging of which was the male clients ceasing to respect and treat Hanna as an authority figure. Pltf.'s App., at 44:19–25 to 45:1–4. Interestingly, earlier that same day, Lowery was suspended from employment with Boys and Girls Home until further notice due to performance issues, most noticeably "talking about personal life in work time, [and] flirtatious behavior with other employees." Deft.'s App., at 0051; Dep. Decker, at 41:6–7. Boys and Girls Home terminated Lowery on July 5, 2000.

The parties do not dispute that Hanna repeatedly reported the harassing conduct to her supervisors during her employment with Boys and Girls Home. However, the parties disagree about the severity of Lowery's conduct, whether or not remedial action was taken, and whether any such action was adequate. Regarding her verbal complaint on or around April 27, 2000, Hanna claims Boys and Girls Home did nothing because she was subjected to sexual harassment by Lowery both on the day she complained and thereafter. Further, Hanna asserts she attempted to report Lowery's continual remarks about her clothing and the way in which she walked, to Decker but to no avail. Hanna claims Decker took no action but merely dismissed Hanna's complaints. Boys and

Girls Home contends Decker calculated that the harassment would come to a halt based on a previous talk she alleges to have had with Lowery. Once Lowery began engaging in retaliatory conduct toward Hanna, Hanna immediately reported this to Decker on May 15, 2000, but Hanna claims Decker did nothing. Boys and Girls Home asserts that Decker responded promptly when she issued Lowery a performance warning nine days later on May 24, 2000. However, Hanna alleges that her requests to be transferred to a shift in which Lowery was not assigned were denied by Decker and Decker's supervisor, Jodi Mattson.

In addition, Boys and Girls Home alleges it requested, at the June 21, 2000 meeting, that Hanna document her complaints about Lowery in writing, but Hanna failed to do so. Hanna claims that she was only asked to document her feelings about how the situation was being handled and admits she did not do this because she did not return to work and was terminated shortly thereafter. Finally, Boys and Girls Home alleges it terminated Hanna's employment on June 27, 2000, because she failed to follow a company policy that required employees to call in if they were not going to be coming to work. Although Hanna admits she failed to follow the policy, she claims that she could not bear to work under these conditions any longer. Ultimately, Hanna claims her failure to follow the policy served as a pretext for Boys and Girls Home to terminate her employment, as opposed to the real reason—retaliation for complaining of sexual harassment by Lowery.

## II. LEGAL ANALYSIS

### A. Standards For Summary Judgment

This court has considered in some detail the standards applicable to motions for summary judgment pursuant to Rule 56 of

the Federal Rules of Civil Procedure in a number of prior decisions. *See, e.g., Swanson v. Van Otterloo,* 993 F.Supp. 1224, 1230–31 (N.D.Iowa 1998); *Dirks v. J.C. Robinson Seed Co.,* 980 F.Supp. 1303, 1305–07 (N.D.Iowa 1997); *Laird v. Stilwill,* 969 F.Supp. 1167, 1172–74 (N.D.Iowa 1997); *Rural Water Sys. # 1 v. City of Sioux Ctr.,* 967 F.Supp. 1483, 1499–1501 (N.D.Iowa 1997), *aff'd in pertinent part,* 202 F.3d 1035 (8th Cir.), *cert. denied,* 531 U.S. 820, 121 S.Ct. 61, 148 L.Ed.2d 28 (2000); *Tralon Corp. v. Cedarapids, Inc.,* 966 F.Supp. 812, 817–18 (N.D.Iowa 1997), *aff'd,* 205 F.3d 1347, 2000 WL 84400 (8th Cir.2000) (Table op.); *Security State Bank v. Firstar Bank Milwaukee, N.A.,* 965 F.Supp. 1237, 1239–40 (N.D.Iowa 1997); *Lockhart v. Cedar Rapids Cmty. Sch. Dist.,* 963 F.Supp. 805 (N.D.Iowa 1997). The essentials of these standards for present purposes are as follows.

### 1. Requirements of Rule 56

Rule 56 itself provides, in pertinent part:

Rule 56. Summary Judgment

. . . . .

(b) For Defending Party. A party against whom a claim . . . is asserted . . . may, at any time, move for summary judgment in the party's favor as to all or any part thereof.

(c) Motions and Proceedings Thereon. . . . *The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*

Fed. R. Civ. P.. 56(a)-(c) (emphasis added).

Applying these standards, the trial judge's function at the summary judgment stage of the proceedings is not to weigh the evidence and determine the truth of the matter, but to determine whether there are genuine issues for trial. *Quick v. Donaldson Co.,* 90 F.3d 1372, 1376–77 (8th Cir.1996); *Johnson v. Enron Corp.,* 906 F.2d 1234, 1237 (8th Cir.1990). An issue of material fact is genuine if it has a real basis in the record. *Hartnagel v. Norman,* 953 F.2d 394 (8th Cir.1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538(1986)). As to whether a factual dispute is "material," the Supreme Court has explained, "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *accord Rouse v. Benson,* 193 F.3d 936, 939 (8th Cir. 1999); *Beyerbach v. Sears,* 49 F.3d 1324, 1326 (8th Cir.1995); *Hartnagel,* 953 F.2d at 394.

### 2. The parties' burdens

Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show lack of a genuine issue." *Hartnagel,* 953 F.2d at 395 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); *see also Rose–Maston v. NME Hospitals, Inc.,* 133 F.3d 1104, 1107 (8th Cir.1998); *Reed v. Woodruff County,* 7 F.3d 808, 810 (8th Cir.1993). "When a moving party has carried its burden under Rule 56(c), its opponent must do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348. Instead, the party opposing summary judgment is required under Rule 56(e) to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions

on file," designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548; *Rabushka ex. rel. United States v. Crane Co.*, 122 F.3d 559, 562 (8th Cir.1997), *cert. denied*, 523 U.S. 1040, 118 S.Ct. 1336, 140 L.Ed.2d 498 (1998); *McLaughlin v. Esselte Pendaflex Corp.*, 50 F.3d 507, 511 (8th Cir.1995). If a party fails to make a sufficient showing of an essential element of a claim with respect to which that party has the burden of proof, then the opposing party is "entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548; *In re Temporomandibular Joint (TMJ) Implants Prod. Liab. Litig.*, 113 F.3d 1484, 1492 (8th Cir.1997). In reviewing the record, the court must view all the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences that can be drawn from the facts. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. 1348; *Quick*, 90 F.3d at 1377 (same).

### 3. Summary judgment in employment discrimination cases

■ Because this is an employment discrimination case, it is well to remember that the Eighth Circuit Court of Appeals has cautioned that "summary judgment should seldom be used in employment-discrimination cases." *Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th Cir.1994) (citing *Johnson v. Minnesota Historical Soc'y*, 931 F.2d 1239, 1244 (8th Cir.1991); *Hillebrand v. M–Tron Indus., Inc.*, 827 F.2d 363, 364 (8th Cir.1987), *cert. denied*, 488 U.S. 1004, 109 S.Ct. 782, 102 L.Ed.2d 774 (1989)); *see also Snow v. Ridgeview Medical Ctr.*, 128 F.3d 1201, 1205 (8th Cir.1997) (citing *Crawford* ); *Helfter v. United Parcel Serv., Inc.*, 115 F.3d 613, 615 (8th Cir. 1997) (quoting *Crawford* ); *Chock v. Northwest Airlines, Inc.*, 113 F.3d 861, 862 (8th Cir.1997) ("We must also keep in mind, as our court has previously cautioned, that summary judgment should be used sparingly in employment discrimination cases," citing *Crawford* ); *Smith v. St. Louis Univ.*, 109 F.3d 1261, 1264 (8th Cir. 1997) (quoting *Crawford* ); *Hardin v. Hussmann Corp.*, 45 F.3d 262, 264 (8th Cir.1995) ("[S]ummary judgments should only be used sparingly in employment discrimination cases.") (citing *Haglof v. Northwest Rehabilitation, Inc.*, 910 F.2d 492, 495 (8th Cir.1990); and *Hillebrand*, 827 F.2d at 364). Summary judgment is appropriate in employment discrimination cases only in "those rare instances where there is no dispute of fact and where there exists only one conclusion." *Johnson*, 931 F.2d at 1244; *see also Webb v. St. Louis Post–Dispatch*, 51 F.3d 147, 148 (8th Cir. 1995) (quoting *Johnson*, 931 F.2d at 1244); *Crawford*, 37 F.3d at 1341 (quoting *Johnson*, 931 F.2d at 1244). To put it another way, "[b]ecause discrimination cases often depend on inferences rather than on direct evidence, summary judgment should not be granted unless the evidence could not support any reasonable inference for the nonmovant." *Crawford*, 37 F.3d at 1341 (holding that there was a genuine issue of material fact precluding summary judgment); *accord Snow*, 128 F.3d at 1205 ("Because discrimination cases often turn on inferences rather than on direct evidence, we are particularly deferential to the nonmovant.") (citing *Crawford*, 37 F.3d at 1341); *Webb v. Garelick Mfg. Co.*, 94 F.3d 484, 486 (8th Cir.1996) (citing *Crawford*, 37 F.3d at 1341); *Wooten v. Farmland Foods*, 58 F.3d 382, 385 (8th Cir.1995) (quoting *Crawford*, 37 F.3d at 1341); *Johnson*, 931 F.2d at 1244.

■ Nevertheless, the Eighth Circuit Court of Appeals also observed that "[a]lthough summary judgment should be used sparingly in the context of employment discrimination cases, *Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th Cir.1994), the

1058

plaintiff's evidence must go beyond the establishment of a prima facie case to support a reasonable inference regarding the alleged illicit reason for the defendant's action." *Landon v. Northwest Airlines, Inc.*, 72 F.3d 620, 624 (8th Cir.1995) (citing *Reich v. Hoy Shoe Co.*, 32 F.3d 361, 365 (8th Cir.1994)); *accord Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1134 (8th Cir.) (observing that the burden-shifting framework of *McDonnell Douglas* must be used to determine whether summary judgment is appropriate), *cert. denied*, 528 U.S. 818, 120 S.Ct. 59, 145 L.Ed.2d 51 (1999). More recently, in *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), the Supreme Court reiterated that " '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.' " *Reeves*, 530 U.S. at 142, 120 S.Ct. 2097 (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).[3] Thus, what the plaintiff's evidence must show, to avoid summary judgment or judgment as a matter of law, is " '1, that the stated reasons were not the real reasons for [the plaintiff's] discharge; and 2, that age [or race, or sex, or other prohibited] discrimination was the real reason for [the plaintiff's] discharge." *Id.* at 153, 120 S.Ct. 2097 (quoting the district court's jury instructions as properly stating the law). The Supreme Court clarified in *Reeves* that, to meet this burden, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Id.*

at 148., 120 S.Ct. 2097 The court will apply these standards to the defendants' motion for summary judgment, addressing each of Hanna's claims in turn.

## B. Hanna's Sexual Harassment Claim—Hostile Work Environment

▮ Hanna has asserted a claim of sexual harassment based upon a hostile work environment. The five elements of a hostile work environment claim are that:

(a) she is a member in a protected group; (b) she was subject to unwelcome sexual harassment; (c) the harassment was based on sex; (d) the harassment affected a term, condition, or privilege of employment; and (e) the employer knew or should have known of the harassment and failed to take proper remedial action.

*Stuart v. General Motors Corp.*, 217 F.3d 621, 631 (8th Cir.2000); *accord Schoffstall v. Henderson*, 223 F.3d 818, 826 (8th Cir. 2000) ("(1) [the plaintiff] is a member of a protected class; (2) she was subjected to unwelcome sexual harassment; (3) the harassment was based on her sex; and (4) the harassment was sufficiently severe or pervasive as to alter a term, condition, or privilege of employment."); *Klein v. McGowan*, 198 F.3d 705, 709 (8th Cir.1999) ("that (1) he is a member of a protected group; (2) unwelcome harassment occurred; (3) a causal nexus existed between the harassment and his protected group status; (4) the harassment affected a term, condition, or privilege of employment; and (5) his employer knew or should have known of the harassment and failed to

---

**3.** In *Reeves*, the Supreme Court was considering a motion for judgment as a matter of law after a jury trial, but the Supreme Court also reiterated that "the standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.' " *Reeves*, 530 U.S. at 150, 120 S.Ct. 2097 (quoting *Liberty Lobby, Inc.*, 477 U.S. at 250–51, 106 S.Ct. 2505). Therefore, the standards articulated in *Reeves* are applicable to the present motion for summary judgment.

take prompt and effective remedial action."); *Scusa v. Nestle U.S.A., Co.,* 181 F.3d 958, 965 (8th Cir.1999) ("that (a) she belongs to a protected group; (b) that she was subject to unwelcome sexual harassment; (c) that the harassment was based on sex; (d) that the harassment affected a term, condition, or privilege of employment; and (e) that the employer knew or should have known of the harassment and failed to take proper remedial action."); *Howard v. Burns Bros., Inc.,* 149 F.3d 835, 840 (8th Cir.1998) ("To prove that she was subjected to a hostile work environment in violation of Title VII, [plaintiff] had to show that: '(1) she belongs to a protected group; (2) she was subject to unwelcome sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of employment; and (5) [defendants] knew or should have known of the harassment and failed to take proper remedial action.' ") (quoting *Kopp v. Samaritan Health Sys., Inc.,* 13 F.3d 264, 269 (8th Cir.1993)); *Bales v. Wal–Mart Stores, Inc.,* 143 F.3d 1103, 1106 (8th Cir.1998) ("There are five elements that [plaintiff] was required to prove to prevail on her claim: that she was a member of a protected group, that she was subjected to unwelcome harassment in the workplace, that the harassment was based on sex, that the harassment affected a 'term, condition, or privilege of employment,' and that [defendant] 'knew or should have known' of the harassment and failed to take proper remedial action. ") (quoting *Todd v. Ortho Biotech, Inc.,* 138 F.3d 733, 736 (8th Cir.1998)); *Callanan v. Runyun,* 75 F.3d 1293, 1296 (8th Cir.1996) (" '(1) she belongs to a protected group; (2) she was subject to unwelcome sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of employment; and (5) [her employer] knew or should have known of the harassment and

failed to take proper remedial action.' ") (quoting *Kopp,* 13 F.3d at 269).

The United States Supreme Court has instructed that in order for a work environment to be sufficiently hostile to be actionable, a "sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher,* 524 U.S. at 787, 118 S.Ct. 2275 (citing *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21–22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). When determining whether the alleged conduct rises to an actionable level, a court must examine "the circumstances" including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (quoting *Faragher,* 524 U.S. at 787–88, 118 S.Ct. 2275 (quotations and citation omitted)). The standards for judging hostility must be "sufficiently demanding to ensure that Title VII does not become a 'general civility code.' " *Faragher,* 524 U.S. at 787, 118 S.Ct. 2275 (citation omitted). Thus, the Supreme Court has instructed that "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.' " *Breeden,* 532 U.S. at 271, 121 S.Ct. 1508 (quoting *Faragher,* 524 U.S. at 788, 118 S.Ct. 2275 (quotations and citation omitted)).

Keeping these requirements in mind, the court must first determine whether Hanna has alleged a *prima facie* case of sexual harassment by her co-workers. Regarding the first three elements, Boys and Girls Home concedes, for purposes of

this motion only, that Hanna has generated a jury question as to whether she engaged in a protected activity when she complained of Lowery's sexual harassment; she was subjected to unwelcome sexual harassment by Lowery; and that such harassment was based on her sex. Thus, the court will likewise assume that Hanna is able to establish. these elements of her *prima facie* case. Boys and Girls Home takes issue with the remaining two elements and disputes that the alleged incidents of harassment rise to an actionable level. Moreover, Boys and Girls Home contends it took prompt remedial action as soon as the objected to incidents were reported.

### 1. Effect on employment

■ For sexual harassment to sufficiently effect a term, condition, or privilege of employment, it need not be psychologically injurious, but must create an environment that "would reasonably be perceived, and is perceived, as hostile or abusive." *Harris*, 510 U.S. at 21, 114 S.Ct. 367 (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)). This requirement has both an objective and a subjective prong: "To be actionable, a 'sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so.'" *Stuart*, 217 F.3d at 631 (quoting *Faragher*, 524 U.S. at 787, 118 S.Ct. 2275).

Boys and Girls Home concedes, for purposes of this motion, that Hanna will be able to demonstrate that she perceived her working environment to be subjectively offensive. However, Boys and Girls Home argues that the behavior of her co-worker, Lowery, was not sufficiently severe and pervasive for a reasonable person to find a hostile work environment existed. Boys and Girls Home asserts Lowery's remarks were not physically threatening, but merely offensive utterances. In support of its argument, Boys and Girls Home relies upon *Shepherd v. Comptroller of Pub. Accounts of the State of Texas*, 168 F.3d 871, 872 (5th Cir.1999). There, the Fifth Circuit Court of Appeals found that a co-worker's comment about the color of the plaintiff's nipples, attempts to see down the plaintiff's clothing, and unwanted rubbing of the plaintiff's arm did not reasonably interfere with a reasonable person's work performance. *Id.* at 874. However, the plaintiff in *Shepherd* testified that the co-worker "never propositioned her, asked her out on a ·date, or suggested that he would like to sleep with her." *Id.* at 872. Moreover, the plaintiff refrained from reporting these incidents to her supervisor until almost one year later. *Id.* The plaintiff in *Shepherd* testified that aside from the above incidents, she and the co-worker engaged in friendly discussions almost daily and had an amicable relationship both at work and outside of work. *Id.*

In contrast, Lowery's statements, "I know you like that. I know you were watching me. You want that." coupled with the physical act of grabbing his buttocks and thrusting his groin, could be interpreted by a jury to have sexual overtones. Lowery's invitation to give Hanna a ride home could also be construed in this same light. At·one point, Hanna states she believed "it started out as him being attracted to me and ending up of him hating me." Deft.'s App., at 32; Dep. Hanna, at 37:10–11. Thus, a reasonable jury could conclude that Hanna was the victim of severe sexual harassment that stemmed from her rejection of Lowery's sexual interest in her. What is more, there is no indication from the record that Hanna ever developed a friendly working relationship with Lowery. In fact, within weeks of her beginning work for Boys and Girls Home, Lowery began directing unwelcome sexual conduct at Hanna who did not hesitate to

report such conduct to her supervisors on numerous occasions.

Boys and Girls Home next directs the court's attention to the case of *Adusumilli v. City of Chicago,* 164 F.3d 353, 363 (7th Cir.1998), in which the court found that a co-worker's repeated stares and unwanted touching of the plaintiff's arm and buttocks lacked the requisite severity to be actionable under Title VII. In *Adusumilli,* the court determined that the plaintiff's complaints amounted to no more than "teasing" and "ambiguous comments about bananas, rubber bands, and low-neck tops." *Id.* at 361. The plaintiff even admitted she could not be certain whether or not a co-worker poked her buttocks because she was in a public place and unable to see the physical touching. *Id.* at 357.

In the present record, Lowery's conduct, with regard to his remarks about Hanna's clothing, walk, and overall appearance are specific to Hanna and unambiguous. Further, the parties do not dispute that Lowery made such remarks in the presence of clients of Boys and Girls Home. Hanna claims that the harassing conduct in the presence of clients resulted in a loss of respect and authority by the clients for her as a guidance counselor as set forth in the factual background. On this point, the court regards the fact that the clients were all male as significant with respect to the effect that the infliction of the sexual harassment had upon Hanna.

■ For the same or similar reasons, the court believes that the co-worker harassment in the present record is distinguishable from allegations in *Hocevar v. Purdue Frederick Co.,* 223 F.3d 721 (8th Cir.2000). That is so because the inquiry into the objective severity of harassment

> requires careful consideration of the social context in which particular behavior occurs and is experienced by its target ... The real social impact of workplace behavior often depends on a constella-

tion of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed.

*Oncale v. Sundowner Offshore Serv., Incorp.,* 523 U.S. 75, 81–82, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998) (Scalia, J., concurring).

■ While offensive comments alone may not serve as sufficient evidence of a sexually abusive work environment, "even conduct that 'does not seriously affect employees' psychological well-being, can and often will detract from employees' job performance, discourage employees from remaining on the job, or keep them from advancing their careers." *Smith v. St. Louis Univ.,* 109 F.3d 1261, 1264 (8th Cir. 1997) (quoting *Harris,* 510 U.S. at 22, 114 S.Ct. 367). As the Court in *Harris v. Forklift Systems, Inc.* observed, "[t]his is not, and by its nature cannot be, a mathematically precise test." *Harris,* 510 U.S. at 22, 114 S.Ct. 367.

■ With this in mind, the court turns to Boys and Girls Home's argument that the harassing conduct lasted for less than two weeks and thus was not sufficiently frequent. The frequency of the alleged harassing conduct is one relevant consideration in the analysis, but Hanna sets forth a number of alleged instances of conduct that are severe. *Quick,* 90 F.3d at 1378. Moreover, Lowery's remarks commenced when Hanna began working as a guidance counselor at Boys and Girls Home. *See St. Louis Univ.,* 109 F.3d at 1264 (finding that plaintiff generated a jury question regarding whether conditions of plaintiff's employment were altered by harassment where frequent derogatory comments began almost immediately after plaintiff began her residency). Hanna asserts that the overt sexual harassment persisted for two weeks in April and continued for a

longer period of time to a lesser degree but did not cease altogether. In support of her claim, Hanna identifies two other co-workers in addition to Lowery, Jason Palsma and a woman by the name of Camillia, as contributing to the hostile work environment through their participation with Lowery in joking and kidding around during shifts with Hanna and undermining her authority in front of Boys and Girls Home clients. Boys and Girls Home contends that these alleged instances of harassment by co-workers, other than Lowery, are insufficiently severe and pervasive. Whether or not these specific instances of harassment by Palsma and Camillia are sufficiently severe and pervasive is not determinative of the court's decision to deny or grant summary judgment because "[a] work environment is shaped by the accumulation of abusive conduct, and the resulting harm cannot be measured by carving it 'into a series of discrete incidents.'" *Hathaway v. Runyon*, 132 F.3d 1214, 1222 (8th Cir.1997) (quoting *Burns v. McGregor Elec. Indus., Inc.*, 955 F.2d 559, 564 (8th Cir.1992)). It is enough that these incidents of other co-worker harassment may have aggravated the hostile work environment. Hanna has shown that her co-workers' conduct, particularly that of Lowery, altered her daily work environment and caused her humiliation and intimidation that occurred both in the presence of co-workers and clients. *See Carter v. Chrysler Corp.*, 173 F.3d 693, 702 (8th Cir.1999). Given this showing, Hanna has generated genuine issues of material fact surrounding the severity and pervasiveness of the harassment.

### 2. Prompt remedial action requirement

In *Dhyne v. Meiners Thriftway, Inc.*, 184 F.3d 983, 987 (8th Cir.1999), the Eighth Circuit Court of Appeals recognized the distinction between harassment by supervisors and harassment by non-supervisory co-workers. Specifically, the *Dhyne* court stated:

> The Supreme Court recently discussed at length an employer's vicarious liability for a hostile work environment created by a supervisor. *See Burlington Ind., Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). This is a different type of case because it involves harassment by a non-supervisory co-worker. Our court has long recognized that an employer may be directly liable for such harassment if it knew or should have known of the conduct and failed to take proper remedial action. *See Callanan v. Runyun*, 75 F.3d 1293, 1296 (8th Cir.1996); *Hall v. Gus Constr. Co.*, 842 F.2d 1010, 1015–16 (8th Cir.1988).

*Dhyne*, 184 F.3d at 987. Consequently, the decisions in *Ellerth* and *Faragher* did not disturb the negligence standard that governs employer liability for a non-supervisory co-worker's harassment. Having concluded previously that Hanna generated a genuine issue of material fact regarding the first four elements of her *prima facie* case based on a sexually hostile work environment, the court will now address the fifth element of her sexually hostile work environment claim by non-supervisory co-workers.

In order to establish her *prima facie* case of creation of a sexually hostile work environment by non-supervisory co-workers, Hanna must also show that Boys and Girls Home knew or should have known about the harassment and failed to take prompt remedial action reasonably calculated to stop the harassment. *Carter*, 173 F.3d at 702 (citing *Bailey v. Runyon*, 167 F.3d 466, 468 (8th Cir.1999) and *Davis v. Tri–State Mack Distribs., Inc.*, 981 F.2d 340, 343 (8th Cir.1992)).

"Once an employee complains to her employer about sexual harassment by a co-worker, the employer is on notice and must take proper remedial action to avoid liability under Title VII." *Hathaway*, 132 F.3d at 1223 (declaring that the remedial action must be "reasonably calculated to end the harassment") (citing *Davis*, 981 F.2d at 343); *accord Zirpel v. Toshiba Am. Info. Sys., Inc.*, 111 F.3d 80, 81 (8th Cir.1997) (the district court properly granted summary judgment in an employer's favor because the employer "promptly took 'remedial action ... reasonably calculated to end the harassment once it knew or should have known about a harassing co-employee's behavior,'") (citing *Kopp v. Samaritan Health Sys., Inc.*, 13 F.3d 264, 269 (8th Cir.1993)). The employer cannot avoid liability by doing nothing simply because the co-worker denies that the harassment occurred. *Hathaway*, 132 F.3d at 1223 (citing *Fuller v. City of Oakland*, 47 F.3d 1522, 1529 (9th Cir.1995)). Indeed, an employer may take remedial action even where a complaint is uncorroborated. *Id.* (citing *Knabe v. Boury Corp.*, 114 F.3d 407, 409, 413 & n. 11 (3d Cir. 1997)).

■ The promptness and adequacy of an employer's response will often be a question of fact for the fact-finder to resolve. *See Howard v. Burns Bros., Inc.*, 149 F.3d 835, 841 (8th Cir.1998); *e.g., St. Louis Univ.*, 109 F.3d at 1265; *Kopp*, 13 F.3d at 270. Factors in assessing the reasonableness of remedial measures may include the amount of time that elapsed between the notice and remedial action, *compare Bailey*, 167 F.3d at 468–69 *and Howard*, 149 F.3d at 843–44, *with Stuart*, 217 F.3d at 633–34, the options available to the employer, possibly including employee training sessions, transferring the harassers, written warnings, reprimands in personnel files, or termination, *see Hathaway*, 132 F.3d at 1224, and whether or not the measures ended the harassment, *compare*

*Stuart*, 217 F.3d at 633–34 (finding investigation by employer within nine days of the complaint and immediate removal of the harassing subject matter was prompt and remedial), *Zirpel*, 111 F.3d at 81 (finding sufficient remedial measures undertaken where employer offered to intervene between the complaining employee and harassing employee and eventual meeting with alleged harasser by employer to issue a written warning) *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 675–79 (10th Cir.1998) (disciplining both harassers for all discovered instances of harassment within one day of the complaints adequate) *with St. Louis Univ.*, 109 F.3d at 1265 (finding genuine issue of material fact existed where employer response took four months and placed the alleged harasser in charge of stopping the harassment), *Baty v. Willamette Indus., Inc.*, 172 F.3d 1232, 1242 (10th Cir.1999) (determining a jury could reason investigation was a sham and employer embraced a lackadaisical attitude toward employee's numerous complaints), *and Intlekofer v. Turnage*, 973 F.2d 773, 779–80 (9th Cir.1992) (counseling prescribed for alleged harasser insufficient to remedy harassment).

■ There is evidence in the record that Hanna reported several instances of harassment to Boys and Girls Home's supervisors, namely Nicki Decker and Jodi Mattson, beginning on or around April 27, 2000. Hanna also alleged Decker was present on at least one occasion when Lowery harassed her. Lowery left his post and when asked by Decker who was responsible for leaving, Lowery accused Hanna and began degrading her in front of Decker. Hanna turned and asked for Decker's help, but Decker simply told her, "You have got to work it out.... we'll talk about it later" but nothing else was ever said. Deft.'s App., at 0039; Dep. Hanna, 71:15–25 to 72:1–5. Thus, Hanna alleges that

Boys and Girls Home knew or should have known of Lowery's harassing conduct. Boys and Girls Home alleges Decker talked to Lowery about his behavior shortly after April 27, 2000; however, Hanna claims Decker did nothing in response to her initial complaints. Hanna further alleges that if Decker had met with Lowery "the other day," Lowery continued to sexually harass her anyway. Deft.'s App., at 0030; Dep. Hanna, 35:19–22. As a result, Hanna claims that when Boys and Girls Home did respond, its response was inadequate because Lowery and other co-workers were undeterred. Hanna also claims that her subsequent attempts to report Lowery's harassing conduct were defeated by Decker's unwillingness to listen or even acknowledge Hanna's concerns. The court in *Adler v. Wal–Mart Stores, Inc.* stated:

> The employer is, of course, obliged to respond to any repeat conduct; and whether the next employer response is reasonable may very well depend upon whether the employer progressively stiffens its discipline, or vainly hopes that no response, or the same response as before, will be effective. Repeat conduct may show the unreasonableness of prior responses.

*Adler,* 144 F.3d at 676.

Boys and Girls Home admits that Hanna reported the alleged harassing conduct repeatedly during her employment until and including the June 21, 2000, meeting with supervisors Mattson, Decker, and Roger Bentz. Boys and Girls Home contends it did respond promptly and adequately to Hanna's reports of alleged instances of sexual harassment. First, within days of her initial complaints and thereafter, on May 24, 2000, when Decker issued Lowery a performance warning in response to Hanna's May 15, 2000, complaint regarding Lowery's retaliatory conduct. Boys and Girls Home argues that after investigating the complaints, it suspended Lowery on June 21, 2000, and subsequently terminated Lowery's employment on July 5, 2000. However, aside from Boys and Girls Home's naked assertion that they investigated Hanna's complaints, the court is unable to find any evidence in the record that suggests the adequacy of the investigation permitting this court, as it has done previously, to grant the employer's motion for summary judgment on determining that the employer's response to the harassment was reasonably calculated to end the harassment. *See Jones v. U.S. Gypsum,* 126 F.Supp.2d 1172, 1179 (N.D.Iowa 2000) (finding adequate commencement of investigation on same day as complaint, immediate suspension of alleged harasser pending outcome of investigation, and suspension without pay; transfer to a different shift; written disciplinary warning; and oral warning advising of termination in event of future harassment at the conclusion of the investigation); *see also Stuart,* 217 F.3d at 626–27 (affirming summary judgment for employer where employer upon receiving complaint offered to move complainant, commenced investigation, removed computer with alleged pornography and inspected others, interviewed thirty employees and informed complainant three times of investigation's status, and within three weeks disseminated letters and employee handbooks explaining sexual harassment policy).

Hanna also alleges Boys and Girls Home's response was inadequate because her requests to be assigned to a different shift, other than one staffed by Lowery, were denied. Courts recognize the complainant's assignment to work in close proximity to harassers as a factor in assessing the reasonableness of the employer's remedial measures. *Hathaway,* 132 F.3d at 1223–24 (citing *Konstantopoulos v. Westvaco Corp.,* 112 F.3d 710, 717 (3d Cir.1997) (finding assignment to work in close proximity to harasser a factor in totality of circumstances analysis)); *see*

*also Adusumilli,* 164 F.3d at 362 (quoting *Ellison v. Brady,* 924 F.2d 872, 883 (9th Cir.1991) ("in some cases the mere presence of an employee who has engaged in particularly severe or pervasive harassment can create a hostile working environment")). The court finds Hanna has generated a genuine issue of material fact as to whether Boys and Girls Home's response to her complaints regarding Lowery were sufficiently prompt or were reasonably calculated to end the harassment. *See Quick,* 90 F.3d at 1376–77 (a court considering a motion for summary judgment must view all the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences that can be drawn from the facts); *Hartnagel v. Norman,* 953 F.2d 394 (8th Cir.1992) (concluding issue of material fact is genuine if it has a real basis in the record) (citing *Matsushita Elec. Indus. Co.,* 475 U.S. at 586–87, 106 S.Ct. 1348). Therefore, Boys and Girls Home's motion for summary judgment on the ground that Hanna has failed to establish her *prima facie* case of a sexually hostile work environment created by non-supervisory co-workers is denied.

### C. Retaliation Claim

■■■ Boys and Girls Home next contends that it is entitled to summary judgment on Hanna's Title VII retaliation claim. Under the sexual discrimination provisions of Title VII, 42 U.S.C. § 2000e–3(a), an employer is forbidden to retaliate against employees for opposing sexual discrimination.[4] *Bogren v. Minnesota,* 236

F.3d 399, 407 (8th Cir.2000), *cert. denied,* —— U.S. ——, 122 S.Ct. 44, 151 L.Ed.2d 16 (2001); *Ogden v. Wax Works,* 214 F.3d 999, 1007 (8th Cir.2000). Title VII makes it unlawful for an employer to discriminate against an employee because of the employee's opposition to an employment practice made unlawful under Title VII or because of the employee's participation in an investigation, proceeding, or hearing under Title VII. 42 U.S.C. § 2000e. Some courts have distinguished between the activities protected by the two clauses of 42 U.S.C. § 2000e–3(a). *See Robinson v. S.E. Pa. Transp. Auth., Red Arrow,* 982 F.2d 892, 896 n. 4 (3d Cir. 1993). The "opposition clause" prohibits retaliation because the employee "opposed any practice made an unlawful employment practice by [Title VII]," while the "participation clause" prohibits retaliation because the employee "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." *Id.* (citing *Holden v. Owens–Illinois, Inc.,* 793 F.2d 745, 748–53 (6th Cir.1986), *cert. denied,* 479 U.S. 1008, 107 S.Ct. 649, 93 L.Ed.2d 704 (1986)). Here, Hanna has brought an "opposition" claim, grounded on her opposition to conduct at Boys and Girls Home that she believed was in violation of Title VII.

■■■ As the Eighth Circuit Court of Appeals has explained, " 'To establish a prima facie case of Title VII retaliation, [the plaintiff] must show: (1) she engaged in activity protected by Title VII; (2) she

---

4. Section 2000e–3(a) provides:

 It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

 42 U.S.C. § 2000e–3(a).

suffered an adverse employment action; and (3) a causal connection [existed] between her protected activity and the adverse employment action.'" *Sowell v. Alumina Ceramics, Inc.*, 251 F.3d 678, 685 (8th Cir.2001) (quoting *Bogren*, 236 F.3d at 407); *Buettner v. Arch Coal Sales Co.*, 216 F.3d 707, 713–14 (8th Cir.2000). If the plaintiff meets this burden and establishes her *prima facie* case by a preponderance of the evidence, a presumption of discrimination arises. *See Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). At this point, the plaintiff is entitled to judgment as a matter of law unless the defendant successfully rebuts the presumption. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. at 502, 113 S.Ct. 2742 (1993). To rebut this presumption of discrimination, the burden falls to the defendant employer to "produc[e] evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason." *Burdine*, 450 U.S. at 254, 101 S.Ct. 1089. If the defendant meets this burden, "the *McDonnell Douglas* framework—with its presumptions and burdens"—disappears. *St. Mary's Honor Ctr.*, 509 U.S. at 510, 113 S.Ct. 2742. In this case, Boys and Girls Home argues that, even if Hanna has established a *prima facie* case of discrimination, it rebutted any presumption of discrimination, having met its burden of production by proffering a legitimate, nondiscriminatory reason for her termination, *i.e.*, that Hanna failed to both follow the call-in policy and not come to work.

Still, "the plaintiff may attempt to establish that he was the victim of intentional discrimination 'by showing that the employer's proffered explanation is unworthy of credence.'" *Burdine*, 450 U.S. at 256, 101 S.Ct. 1089. Moreover, although the presumption of discrimination "drops out of the picture" once the defendant meets its burden of production, *St. Mary's Honor*

*Ctr.*, 509 U.S. at 511, 113 S.Ct. 2742, the trier of fact may still consider the evidence establishing the plaintiff's prima facie case "and inferences properly drawn therefrom ... on the issue of whether the defendant's explanation is pretextual," *Burdine, supra*, at 255, n. 10, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

Boys and Girls Home contends Hanna fails to establish the second and third elements of her *prima facie* case for retaliation because she cannot demonstrate she suffered an adverse employment action or that the alleged adverse action was causally · related to her complaints of sexual harassment.

In *Cherry v. Menard, Inc.*, 101 F.Supp.2d 1160 (N.D.Iowa 2000), this court explained the "adverse employment action" element as follows:

[N]ot everything that makes an employee unhappy is an actionable adverse action. *Montandon*, 116 F.3d at 359; *See also Manning v. Metropolitan Life Ins., Co., Inc.*, 127 F.3d 686, 692 (8th Cir. 1997) (quoting *Montandon* ). [T]he adverse action does not have to be a discharge, *see Manning*, 127 F.3d at 692 ("[A]ctions short of termination may constitute an adverse employment action within the meaning of [42 U.S.C. § 2000e–3(a) ]."); *Kim v. Nash Finch, Co.*, 123 F.3d 1046, 1060 (8th Cir.1997) ("[R]etaliatory conduct may consist of 'action less severe than outright discharge,'" quoting *Dortz v. City of New York*, 904 F.Supp. 127, 156 (S.D.N.Y. 1995)), [but] the allegedly retaliatory conduct must nonetheless be " 'more disruptive than a mere inconvenience or an alteration of job responsibilities' [or][c]hanges in duties or working conditions that cause no materially significant disadvantage." *Kim*, 123 F.3d at 1060

(some internal quotations and citations omitted) (citing *Harlston v. McDonnell Douglas Corp.*, 37 F.3d 379, 382 (8th Cir.1994), and *Thomas v. St. Luke's Health Sys., Inc.*, 869 F.Supp. 1413, 1435 (S.D.Iowa 1994), *aff'd*, 61 F.3d 908, 1995 WL 416214 (8th Cir.1995) (table) (No. 94–4081)). In *Kim*, the Eighth Circuit Court of Appeals explained that what the court must look for is "the kind of serious employment consequences that adversely affected or undermined [the employee's] position, even if [s]he was not discharged, demoted or suspended." *Kim*, 123 F.3d at 1060. Furthermore, the court may examine the cumulative effect of the employer's allegedly retaliatory actions, rather than determining whether any individual action upon which the claim relies was sufficiently adverse. *Id.*

(quoting *Delashmutt v. Wis–Pak Plastics, Inc.*, 990 F.Supp. 689, 699 (N.D.Iowa 1998)); *see also Coffman*, 141 F.3d at 1245 (citing *St. Louis Univ.*, 109 F.3d at 1266) ("[N]ot everything that makes an employee unhappy is an actionable adverse action.").

### 1. Adverse employment action

 Here, Hanna argues that she suffered an adverse employment action when Boys and Girls Home terminated her employment. Leading up to her termination, Hanna alleges her working conditions were negatively affected by her co-workers' retaliatory behavior and Decker's inaction. In particular, Hanna identifies Lowery's repeatedly picking on her and "taking [her] authority away that [she] should have had with the clients in front of them" as demonstrative of the retaliation. Deft.'s App., at 0031; Dep. Hanna, at 36:5–9. Similarly, Hanna cites co-workers Jason Palsma and Camilla as participants with Lowery in undermining and stripping Hanna of her authority in front of clients. Hanna recalls at least one instance in which Lowery and Palsma left Hanna by herself to look after all of the clients during one of their shifts together. In addition, Hanna alleges that supervisor Decker's unresponsiveness and unwillingness to exercise some control over the situation was in retaliation for her complaints of sexual harassment by Lowery.

 Boys and Girls Home argues that Hanna's evidence of retaliation by Lowery is not actionable because it simply amounted to ostracism. The court recognizes that to the extent Hanna alleges her co-workers shunned her, such a demonstration of ostracism and disrespect is insufficient evidence of an adverse employment action under the Eighth Circuit Court of Appeal's decision in *Scusa v. Nestle*, 181 F.3d at 969–70—"general allegations of co-worker ostracism are not sufficient to rise to the level of an adverse employment action for purposes of Title VII." However, this is not Hanna's only claim of retaliation. Hanna claims her termination for failure to follow the company call in policy and report to work on June 26, 2000, served as a pretext for Boys and Girls Home to terminate her employment, as opposed to the real reason—retaliation for complaining of harassment by Lowery—which culminated in the June 21, 2000 meeting with three supervisors of Boys and Girls Home. This record presents a dispute concerning a genuine issue of material fact and more than one conclusion. *But cf. Johnson*, 931 F.2d at 1244 (concluding summary judgment is appropriate in employment discrimination cases only in "those rare instances where there is no dispute of fact and where there exists only one conclusion").

### 2. Causal connection

 Boys and Girls Home also argues that Hanna cannot establish a causal connection between her termination and her complaints of sexual harassment. Boys

and Girls Home asserts that Hanna admits to having been terminated because of her failure to follow the Boys and Girls Home policy requiring employees to call in if they are unable to report for work. There is evidence in the record to support Boys and Girls Home's contention; however, there is also evidence that Hanna believed Boys and Girls Home wanted her to ignore the policy in order for them to have an excuse for terminating her employment. *See* Deft.'s App., at 0043; Dep. Hanna, at 84:5–8. In the record, in response to opposing counsel's question: "You just feel like you gave them the reason to fire you by not calling and not showing," Hanna responded, "I feel with me not showing and not calling, I'm out the door. They are happy now. Because I got the feeling, or I got the support as though I was a troublemaker when I first complained on Cornell [Lowery]." As additional evidence of causal connection, Hanna argues that her termination was in close proximity to her complaints about Lowery's sexual harassment. Namely, Hanna requested a meeting on June 21, 2000, to discuss Lowery's sexual harassment. Present at the meeting were supervisors Nicki Decker, Jodi Mattson, and Roger Bentz. On June 27, 2000, less than one week after this meeting, Hanna was terminated.

The Eighth Circuit Court of Appeals explained in *Mathews v. Trilogy Communications, Inc.*, 143 F.3d 1160, 1166 (8th Cir.1998) (emphasis added) (quoting *Rath v. Selection Research Inc.*, 978 F.2d 1087, 1090 (8th Cir.1992)), that the causal connection *"may* be established either through direct evidence of retaliation or circumstantial evidence 'such as proof that the discharge followed an exercise of protected rights so closely in time as to justify an inference of retaliatory motive.'"; *see Bassett v. City of Minneapolis*, 211 F.3d 1097, 1104 (8th Cir.2000) (finding less than two months between filing charge of discrimination and adverse action coupled with subsequent wave of increasing levels of disciplinary action created inference of causal connection). *But see Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir.) (en banc), *cert. denied*, 528 U.S. 818, 120 S.Ct. 59, 145 L.Ed.2d 51 (1999) ("Generally, more than a temporal connection between the protected conduct and the adverse employment action is required to present a genuine factual issue on retaliation.").

With this in mind, the court examines Hanna's other allegations regarding the presence of a sufficient temporal nexus. Hanna asserts that Decker, Mattson, and Bentz turned the focus of the meeting, which was to discuss Lowery's conduct, back around on Hanna and gave her a written warning for not using "the right procedure for calling in" sick to Boys and Girls Home as well as speaking to her about an incident where someone accused Hanna of leaving a client unsupervised. Pltf.'s App., at 03; Dep. of Hanna, at 45:5–18. Boys and Girls Home admits to discussing these matters at the June 21, 2000, meeting. Hanna denied the supervision allegation and asserted she had not previously been informed of the call in policy and the warning did not state the date(s) when she allegedly failed to call in. Pltf.'s App., at 03–04; Dep. of Hanna, at 45:22–25 to 46:1–13. The court notes that earlier this same day, Lowery was suspended, yet the supervisors present failed to inform Hanna about his suspension even though the purpose of the meeting was to discuss his alleged harassing behavior toward Hanna. Deft.'s App., at 0050; Dep. Decker, at 40:7–24. Moreover, on the issue of retaliatory actions by her co-workers and supervisor Decker, Hanna highlights the fact that the retaliatory behavior by Lowery began immediately after Decker met with him and Lowery's behavior, over time, infected other co-workers who participated with him in retaliating against Hanna. This record demonstrates several fac-

tors from which a trier of fact might infer a causal link between Hanna's complaining of the alleged sexual harassment and her termination.

██ Assuming Hanna has established her *prima facie* case of retaliation, the burden shifts to Boys and Girls Home to articulate a legitimate, nondiscriminatory reason for its actions, and, if the employer meets that burden, the presumption of retaliation disappears. *Buettner*, 216 F.3d at 713–14. Boys and Girls Home does not detail the company policy regarding the number of warnings, unexcused, or excused absences an employee is entitled to receive before his or her employment is terminated as a result. Because both parties agree that Hanna's failure to call in to inform Boys and Girls Home that she would not be reporting to work was a factor in her termination, the court will assume that Boys and Girls Home has met their burden. However, based on the summary judgment record as discussed in detail, *supra* at C.2, Hanna has demonstrated sufficient evidence, if believed, that the reason given for her discharge was a pretext for the true reason her employment was terminated—retaliation for her reporting Lowery's sexual harassment.

### III. CONCLUSION

The court concludes that genuine issues of material fact preclude summary judgment on Hanna's sexual harassment hostile work environment claim. The court also concludes that Hanna has established a *prima facie* case of retaliation, thus precluding summary judgment on this claim. Therefore, Boys and Girls Home's **motion for summary judgment is denied in its entirety.**

**IT IS SO ORDERED.**